Argued March 29, modified April 18, 1916.

## PHIPPS v. ROGUE RIVER VALLEY CANAL CO.
### (156 Pac. 794.)

Nuisance—Injunction—Injury.

1. A mere tendency to injure is not sufficient to warrant equitable relief against an alleged nuisance, though it is not necessary to a right of action that one should have been driven from his dwelling or habitation by the alleged nuisance, and a reasonable apprehension of damage, or a danger which is apparent and real, as distinguished from an im-

aginary fear of injury from an alleged nuisance, may warrant equitable relief.

[As to injunctive relief as affected by comparative injury to parties, see note in Ann Cas. 1913A, 248.]

**Injunction—Irreparable Injury.**

2.   The infliction of irreparable injury, such as a court of equity will enjoin, includes also that degree of wrongs of a repeated or continuing kind, producing hurt, inconvenience or damage, which can be estimated only by conjecture, and not by any accurate standard of measurement.

**Eminent Domain—Restraining Condemnation—Nuisance—Conditions.**

3.   In actions to condemn rights of way for an irrigating ditch, and in the owners' suit in equity to enjoin the maintenance of such actions, where it appeared that the non-navigable creek from which the ditch was to take water received the sewage of several towns and the street litter of another, that in the dry season the pools of stagnant water became very offensive, and that the ditch, though intended to be used only during the high-water stage of the creek, would, when dry, create offensive odors and an intolerable nuisance, the defendant would be restrained from condemnation, except on condition of conducting the water in suitable and safe pipes from the proposed intake to the ditch into which the water was to be discharged, and upon giving a bond to serve as indemnity, in addition to the awards to the owners, which on completion of the pipe-line might be canceled, and a new bond conditioned for its maintenance without further damage to the owners given.

From Jackson:   FRANK M. CALKINS, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

The Rogue River Valley Canal Company, a corporation, .commenced actions in the Circuit Court of the State of Oregon for Jackson County, against Ala R. Phipps and her sons and daughters, to condemn a right of way for an irrigating ditch across tracts of land owned by them in severalty in the northwest part of the City of Medford.

The defendants in that action, having filed answers therein, also as plaintiffs instituted this suit in equity, in the nature of a cross-bill, to enjoin the maintenance of such actions.   The latter cause, being at issue, was tried, and from the testimony taken the court made findings of fact, *inter alia*, that the contemplated ditch,

when constructed and used at the time and in the manner intended, would not constitute a nuisance, and thereupon dismissed the suit, from which decree the plaintiffs appeal.                              MODIFIED.

For appellants there was a brief and an oral argument by *Mr. W. E. Phipps.*

For respondent there was a brief over the name of *Messrs. Neff & Mealey,* with an oral argument by *Mr. Porter J. Neff.*

Opinion by Mr. Chief Justice Moore.

 The evidence shows that Bear Creek, a non-navigable stream from which the defendant's proposed irrigating ditch is designed to divert water, flows northerly through Jackson County. This stream receives the sewage of Ashland, Talent, Phoenix and Medford, and the street litter and compost of the latter city also are discharged by storm sewers into the creek. The rains and melting snow on the mountains keep up quite a volume of water in Bear Creek until the warm weather dries up that stream in most places, leaving, however, pools of stagnant water and sand and gravel bars, which places, by reason of the heat, cause the sewage and foul matter cast into the stream to become very offensive. The water in the creek usually becomes low in June of each year, and continues in that condition until about September, when the drought is broken. The defendant owns a series of ditches, which take water from Fish Lake, Four Mile Lake, and the surplus from the north and south forks of Little Butte Creek and from Antelope Creek. From these streams a sufficient quantity of water

cannot always be obtained properly to irrigate about 70,000 acres of arable land which lie under the ditches mentioned. In order to augment the supply the defendant secured from the state engineer permission to divert from Bear Creek the surplus water after the measure of lower prior appropriators on that stream had been satisfied. Thereupon a survey and plat were made of the proposed supplemental ditch; the point of diversion being located on Mrs. Phipps' land and thence crossing northwesterly the premises of the other plaintiffs. As no agreement could be reached as to the compensation which should be paid for the easement demanded, actions at law to condemn the right of way were instituted by the defendant. In order to prevent the maintenance of such actions at law, this suit in equity was instituted, terminating in a decree as hereinbefore stated.

1. It is contended by appellants' counsel that to permit the filthy water from Bear Creek to flow in an open ditch across the plaintiff's premises will at all times create such a stench as to render the atmosphere impure, producing sickness, and causing the contemplated diversion to become a nuisance, and, such being the case, an error was committed in dismissing the suit. Such anticipated consequences are denied by defendant's counsel, who maintain that the intended diversion will be undertaken only when the water flowing in the creek is at a high stage, thereby carrying off through the ditch the sewage, which will be rendered innoxious by the then volume of the current; that the plaintiffs' apprehension of injury is not sufficient to authorize equitable intervention, and, this being so, no error was committed as alleged. One of the cases relied upon by defendant's counsel to support the legal principle last asserted is *Esson* v. *Wattier,*

25 Or. 10 (34 Pac. 756), where it was ruled that in order to justify a court of equity in interfering by injunction to abate a nuisance, the thing that unlawfully worketh hurt, inconvenience or damage must be an actual existing offense, and not merely apprehended. In that case it was insisted that by erecting in a stream a dam the water thus to be impounded would become foul, stagnant and unhealthy, thereby impregnating the atmosphere with malaria, which noxious exhalation would render the plaintiff and his family liable to sickness. The dam so referred to had not been completed when that suit was commenced, and whether or not the consequences supposed would necessarily result was only problematical.

Where, however, it appears from the evidence that water confined by a dam has produced malaria causing illness, a court of equity will intervene to prevent a continuance of the injury: *Richards* v. *Daugherty,* 133 Ala. 569 (31 South. 934). In that case it was decided that where the erection of dams, which affect the natural flow of a running stream, results in injury to the health of persons living in the vicinity, such obstruction constitutes a nuisance and may be abated by a suit in equity by a person the health of whose family is injured thereby, without waiting the trial of the issue of nuisance *vel non* by an action at law. "It is difficult," says a text-writer, "to define just what degree of injurious influence must be reached in order to warrant the court in determining what circumstances constitute a nuisance. A mere tending to injury is not sufficient; there must be something actually appreciable, which of itself arrests the attention, that rests not merely in theory, but strikes the common sense of the ordinary citizen. The determination, however, of the question rests in sound judgment and

depends upon common sense in each case. * * If property cannot be enjoyed unless the health is endangered thereby, a nuisance exists. It is not necessary, however, in order to constitute a nuisance, that the annoyance should be of such a character as to endanger the health of a person or persons, or of the neighborhood, the act need not be positively unhealthy. It is sufficient if it occasions that which is offensive to the senses, and that in any way renders the enjoyment of life and property uncomfortable, or that it prevents its enjoyment in as full and ample a manner as before, that it invades or violates a vested right and materially interferes with the ordinary comfort of human existence or renders one's dwelling-house unfit for habitation; and if the enjoyment of life and property has been so rendered uncomfortable, it is not indispensable to sustain a right of action that one should, by the annoyance or alleged nuisance, have been driven from his dwelling or habitation. So even that which causes a well-founded, reasonable apprehension of damage may be a nuisance": Joyce, Nuisance, § 19. To the same effect see the first headnote to the case of *Melker* v. *New York,* 190 N. Y. 481 (83 N. E. 565, 13 Ann. Cas. 544, 16 L. R. A. (N. S.) 621). A danger which is apparent and real, as distinguished from an imaginary fear of injury, from an alleged nuisance, may warrant equitable relief: *Cheatham* v. *Shearon,* 1 Swan (Tenn.), 213 (55 Am. Dec. 734).

2. An excerpt from the brief of plaintiffs' counsel is, in our opinion, fully justified, and reads:

"The testimony herein of four physicians is to the effect that the ditch, if constructed, will menace the health of the plaintiffs and community, and fourteen other witnesses assert it will be a nuisance by reason of irreparable injury and damage to plaintiffs' property."

The infliction of "irreparable injury," such as a court of equity will enjoin, includes also that degree of wrongs of a repeated or continuing kind which produce hurt, inconvenience or damage that can be estimated only by conjecture, and not by any accurate standard of measurement: 29 Cyc. 1224; *Bernard* v. *Willamette Box & L. Co.*, 64 Or. 225 (129 Pac. 1039).

3. Most of plaintiffs' witnesses, who on direct examination had testified as to the offensive odor emanating from the pools and bars to be found in Bear Creek in the dry season, admitted on cross-examination that when the water on that stream was high they had not perceived such stench.  Dave Phipps, one of the plaintiffs, however, who had lived near that stream many years, and evidently had a better opportunity than any other witness of observing the disgusting odor, testified that during the summers he was obliged to go to the mountains to avoid the prevailing foul atmosphere.  He was asked:

"You have worked a great deal in and around Bear Creek there, haven't you?"

He answered:

"Yes, sir.

"Q. You have been marketing sand and gravel, have you?

"A. Yes, sir.

"Q. You may tell the court whether or not the water of Bear Creek is foul and offensive at all times of the year.

"A. Well, I won't let my cow drink out of it for milk for my own use.

"Q. That did not answer the question.  I want to know whether it is foul and offensive at all times of the year.

"A. I think so.

"Q. When were you down in there getting gravel the last time?

"A. Last Saturday [referring to the week preceding February 1, 1915, when the trial of this cause was commenced].

"Q. And what was the nature of Bear Creek at that time and in this sand and gravel that you got out of there?

"A. Why, the odor is so bad it is pretty hard for a fellow to stay to shovel on a load where I was loading."

This testimony is not contradicted in any manner, except by the cross-examination of the witnesses to which reference has been made. Though the contemplated open ditch may be used by the defendant only during the high water in the stream, when the volume recedes there will be found on the bottom and sides of the artificial conduit an accumulation of filth which, being exposed to the summer heat, must necessarily cause an offensive scent, not merely to be apprehended, but certainly to be expected, thereby creating an intolerable nuisance, the maintenance of which a court of equity will enjoin in the proposed manner of the use.

The defendant will therefore be restrained from prosecuting its actions at law against the several plaintiffs, except on condition of conducting the water in suitable and safe pipes from the proposed intake on Bear Creek to the ditch into which the water is to be discharged. In order to insure a faithful compliance with this requirement, it is ordered that the defendant give to the plaintiffs a good and sufficient bond, executed by some reputable bonding company, in the sum of $12,000, the probable cost of putting in such pipes, the bond to be approved by the court and to serve as indemnity, in addition to the several sums to be awarded the plaintiffs in the condemnation actions. When the ditch is thus completed to the satisfaction of

the court, the specified bond may be canceled upon the substitution of another like bond, executed in the same manner, for the sum of $2,000, and conditioned for the maintenance of the conduit, as here indicated, without further damages to the plaintiffs, or to any of them.

The decree appealed from will be modified, and one entered here in accordance with the view hereinbefore expressed.                                          MODIFIED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE McBRIDE concur.