Argued April 30; affirmed June 18; rehearing denied September 3, 1946

## KRAMER ET AL. *v.* SWEET ET AL.
### (169 P. (2d) 892)

R. J. GREEN, Judge.

*S. H. Burleigh* and *Carl G. Helm,* both of La Grande (Dixon & Burleigh and Helm & Helm, on brief), for appellants.

*George T. Cochran,* of La Grande (Cochran & Eberhard, on brief), for respondents.

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK, BRAND and HAY, Justices.

HAY, J.

Plaintiffs brought this suit to enjoin, as a nuisance, the operation of a slaughterhouse by defendants. From a decree in favor of plaintiffs, defendant Sweet, who is now the sole defendant, has appealed to this court.

The property upon which the slaughterhouse stands was acquired by defendants in 1943. There was an old building upon it, and, in February of that year, defendant Sweet began to enlarge and improve it, and installed

therein machinery and equipment for the operation of a slaughterhouse and meat-processing plant. Adjacent to the building, he erected pens and corrals for the reception and holding of animals intended for slaughter. The plant is situated upon the bank of the Grande Ronde River, and the overflow from its septic tanks discharges, through gravel, into that stream. As soon as the plaintiffs learned that the plant was to be used as a slaughterhouse, which was before much of the equipment had been installed, they protested, energetically but ineffectively.

The defendant's investment in the plant is $10,736.14, of which $100 is in the site, $5,083.92 in the building, and $5,552.22 in equipment.

Plaintiffs reside in the immediate vicinity of the slaughterhouse. The evidence abundantly indicates that the district is chiefly residential in character. All but one of the plaintiffs' residences are within the city limits of La Grande, and the one exception is just outside the city limits. The district has been laid out in lots and blocks, and is traversed by city streets or by extensions thereof. The grounds around the residences have been improved by sightly lawns and gardens, with shade trees and shrubbery. The Grande Ronde River, flowing in an easterly direction, bounds the district on the north. Defendant's slaughterhouse is outside the city limits, and is within about 180 feet of the residence of one of the plaintiffs.

The trial court found that the operation of the plant produces noisome and offensive odors, and, in summer, attracts swarms of flies; that the prevailing winds carry such odors and flies to the residences of the plaintiffs; and that, operated as a slaughterhouse between April 15th and November 1st, it is a nuisance.

A careful consideration of the evidence has persuaded us that such findings were justified.

While, in our opinion, the evidence preponderates in favor of the plaintiffs, it was not by any means one-sided. An assistant state veterinarian, who made several official inspections of the plant, testified for defendant. On his first inspection, he said, he found an excessive number of flies, but the plant and equipment were clean. He did not approve of the location of the septic tanks with reference to their proximity to the river, but said that the condition was not "too alarming". He found no "exclusive" or nauseating odors. A member of the Oregon State Police testified that he investigated the plant on various occasions, and found no nauseating odors present. A sergeant of State Police testified that the slaughterhouse was in thoroughly good up-to-date condition, with no extremely offensive odors other than one would find around any similar establishment. On cross-examination, however, he admitted that he would not like to have his own house "sitting across" from the plant, but said that he considered that to be a "personal question". A veterinarian testified that, in his opinion, the plant was as sanitary and clean as it could be, and that he noticed no offensive smells or excessive numbers of flies. One householder of the vicinity testified that odors were present once in a while, and fairly bad at times, but that he felt, if they became bad enough, he could always move! Others testified that they experienced no offensive odors or excessive noises, nor observed any other annoying conditions. A livestock dealer, who said that the defendant was a good customer of his, considered the sanitation and cleanliness of the plant as being "tops". He admitted that there was an odor, but said that it was a pleasing one to him!

■■ It is true that the witnesses for plaintiffs were mainly plaintiffs themselves and members of their families, and that their testimony was opposed, as above noted, by that of officers who had a certain amount of supervisory control over the plant. However, there was no attempt to impeach the plaintiffs' witnesses as to veracity or otherwise. They appeared to be worthy and credible persons. One need not be an expert to be able to smell a foul odor, or to testify about it. *Trowbridge v. Lansing,* 237 Mich. 402, 212 N. W. 73, 50 A. L. R. 1014. The testimony of these people was strong and convincing. They said that, when the wind is in the west, the stench is so nauseating that it is impossible for them or their families to enjoy a meal in their homes, or to sleep in them unless the doors and windows are tightly closed. One of the plaintiffs said that, because of the obnoxious conditions, he sold his property and moved out of the neighborhood. Clearly, plaintiffs were entitled, at the least, to the relief which was awarded them. *Ludlow v. Colorado Animal By-Products Co.,* 104 Utah 221, 137 P. (2d) 347.

■ From the evidence, it would appear that defendant used reasonable care in the operation of his plant, and the offensive odors and excessive number of flies which resulted may have been normally incident to the carrying on of such a business. These facts, however, constitute no defense in this case, as the operation has interfered with plaintiffs in the reasonable and comfortable enjoyment of their property. Joyce, Nuisances, section 167; *Adams v. Clover Hill Farms,* 86 Or. 140, 167 P. 1015; *American S. & R. Co. v. Godfrey,* 158 F. 225, (C. C. A. 8th) 14 Ann. Cas. 8.

As we have mentioned, the plaintiffs were diligent in protesting against the establishment of the slaughter-

house, and the defendants, before they had expended much money in that connection, had every opportunity to desist from installing the plant. Surely, within a reasonable distance of the city of La Grande, there are many suitable sites whereon a slaughterhouse might be operated without creating a nuisance.

■ There was evidence that, upon some of the plaintiffs' premises, there are insanitary conditions, such as manure piles and outdoor privies, and that at least one of the plaintiffs keeps a milch cow. Such conditions, however, are not nuisances *per se,* and, in any event, they cannot be relied upon defensively in the present suit. *Ludlow v. Colorado Animal By-Products Co.,* supra (104 Utah 221, 137 P. (2d) 347); *Wade v. Miller,* 188 Mass. 6, 73 N. E. 849. Odors which, in the heart of a city, or in a residential district having all the amenities of modern urban existence, might be a nuisance, may be but the ordinary domestic exhalations of unsewered suburbia, such as would offend the nostrils of none but the most dainty. *Lex non favet delicatorum votis. Aldred's Case* (1610) 9 Coke 57b, 77 Eng. Reprint 816.

The decree enjoined the defendant from operating his plant as a slaughterhouse at any time of the year between April 15th and November 1st, and "from conducting and operating the business of a slaughterhouse and meat processing plant upon said premises at any time to the discomfort, injury or damage of the * * * plaintiffs * * * or their successors in interest, so as to become a nuisance".

■ Defendant contends that a meat-processing plant is not a nuisance *per se.* 39 Am. Jur., Nuisances, section 99. Neither is a slaughterhouse a nuisance *per se,* nor, if properly conducted and in a proper locality,

is it a nuisance in fact. It may, however, be or become a nuisance by reason of the character of the neighborhood in which it is situated. 46 C. J., Nuisances, section 274. The location of such a plant so near to private dwelling-houses as to interfere with the vested rights of the owners thereof constitutes a nuisance that may be enjoined by the courts. Anno., 27 A. L. R., 330-1; 46 C. J., Nuisances, section 274; 48 Am. Jur., Slaughterhouses, section 5.

The slaughtering of livestock is a lawful and necessary business. There is no legitimate excuse, however, for the location of a slaughterhouse in a residential district. *Thomas v. Dougherty,* 325 Pa. 525, 190 A. 886; *Grant v. Rosenburg,* 112 Wash. 361, 192 P. 889, 27 A. L. R. 332; *White v. Holman,* 44 Or. 180, 74 P. 933, Ann. Cas. 843. The plaintiffs had established their residences in the locality for many years prior to the invasion thereof by defendant's slaughterhouse, and, under those circumstances, the court must take a less favorable view of defendant's case than it might have been disposed to take if his business had been maintained in the neighborhood for a long period of time. *Conway v. Gampel,* 235 Mich. 511, 209 N. W. 562.

A slaughterhouse in a residential district is *prima facie* a nuisance. Joyce, Nuisances, section 126; *Reichert v. Geers,* 98 Ind. 73, 49 Am. Rep. 736. It was, therefore, incumbent upon the defendant to show that his plant is not a nuisance in fact. *Pruner v. Pendleton,* 75 Va. 516, 40 Am. Rep. 738. It was not necessary for the plaintiffs to show that the stenches and excessive number of flies, of which they complain, created a positively unhealthy condition. It was established that the condition thus brought about is offensive to the senses, renders life uncomfortable, and interferes with

plaintiffs' enjoyment of their property in .as full .and ample a manner as theretofore. Such condition is a nuisance. Joyce, Nuisances, sections 127, 129, 166; *Phipps v. Rogue River Valley Canal Co.,* 80 Or. 175; 156 P. 794, 7 A. L. R. 741; *Trowbridge v. Lansing,* supra (237 Mich. 402, 212 N. W. 73, 50 A. L. R. 1014.)

■ It is true that this case does not involve a restricted and exclusive residential district, but that is immaterial. The law makes no distinction between classes of property or of persons.

■ Under the evidence, the nuisance complained of was no doubt a public one. Although each of the plaintiffs is the owner of a separate property, the fact that the nuisance inflicts upon each an identical injury does not make it such a public nuisance as to prevent them from uniting in a suit for injunctive relief. Joyce, Nuisances, section 127; Anno., 27 A. L. R. 336.

■ The trial judge inspected the defendant's premises in person. As the hearing was in the month of May, he observed the plant under average summer conditions, a factor which gives point to his conclusions upon the weight of the evidence. Defendant argues that, before having had an absolute injunction inflicted upon him, he should have been given a reasonable opportunity to correct the conditions which caused the nuisance. It is to be noted, however, that, in his pleading and by his evidence, he contended that his plant was of the most sanitary and up-to-date description, and was operated in such a manner that no offensive odors or other conditions of nuisance resulted. Nevertheless, it appears that the plant is a nuisance in fact. It is proper, in such cases, to allow a defendant a reasonable time to remove his plant, or to make such changes as may be necessary to put an end to the

nuisance. 46 C. J., Nuisances, section 419, p. 793. The decree herein was entered on August 10, 1945. It provided that the injunction should not be effective until sixty days thereafter. Defendant took advantage of almost the whole of the sixty-day period of grace, and then on October 8, 1945, served and filed his notice of appeal. Under the evidence, the court might well have enjoined the operation of the slaughterhouse absolutely. We think that the injunction should be made effective without unreasonable delay. That part of the decree which enjoins the operation of defendant's plant as a slaughterhouse between April 15th and November 1st will, therefore, be suspended for a period of thirty days from the date of this court's mandate hereunder.

The decree is affirmed, with costs.