Argued October 28, affirmed December 18, 1975
petition for rehearing denied January 13, 1976

# PHILLIPS RANCH, INC., *Respondent, v.*
# BANTA, *Appellant.*

543 P2d 1035

*Harold Banta* of Banta, Silven, Young & Marlette, Baker, argued the cause and filed briefs for appellant.

*Ralph G. Monson,* Baker, argued the cause and filed a brief for respondent.

Before O'Connell, Chief Justice, and McAllister, Denecke, Tongue, Howell and Bryson, Justices.

## O'CONNELL, C. J.

This is a suit seeking to enjoin a nuisance and to recover compensatory and punitive damages for harm caused by the nuisance. Defendant counterclaims, asserting an easement to transport water across plaintiff's land. The trial court awarded $5,000 compensatory damages to plaintiff, but refused to award punitive damages or to grant an injunction against defendant. The court found against defendant on his counterclaim. Defendant appeals.

Plaintiff and defendant each own property along the Powder River in Baker County, Oregon. Plaintiff's land is located immediately upstream from defendant's land. The diagram on the following page will facilitate an understanding of the issues involved in the suit and counterclaim.

Defendant maintains an irrigation pump in the Powder River at a point where it flows through his land (labeled "P" on the diagram). In order to insure a pool of water sufficient for operation of the

pump during periods of low water in the summer, defendant placed obstructions in the river downstream from the pump ("A" and "B" on diagram). Although

Phillips Ranch, Inc. v. Banta

Ditch alleged in counter-claim to be the only method of transporting water from Erwin ditch to defendant's land

Irrigation ditch that overflowed when water backed up behind ice dam in winter of 1972-73

Plaintiff

FLOODED AREA

Path of easement alleged in counterclaim

Defendant

defendant also built a bypass from one part of the river to another (as shown on the diagram), the ob-

structions reduced the speed at which the river flowed through defendant's and plaintiff's property.

Plaintiff alleges that defendant filled portions of the river with sand and gravel in such a manner as to restrict the flow capability of the original stream bed; that these obstructions have caused the river to back up and flow across plaintiff's property, and subterraneanly saturate plaintiff's soil, resulting in washing away topsoil on plaintiff's land and in destroying plaintiff's efforts to re-level his land; and that these obstructions have been and continue to be a nuisance.

Plaintiff established that his land was damaged during the winter of 1972-73 when an ice jam formed behind the obstructions placed in the river by defendant, causing the river to overflow its banks and to flood plaintiff's land.

Defendant contends that the trial court's findings of fact and conclusions of law are not consistent with the theory underlying plaintiff's complaint. The complaint alleges that the restriction of the flow of the stream on defendant's land caused damage to plaintiff's land and that "said restriction has been and continues to be a nuisance." Plaintiff sought the abatement of the continuing nuisance, together with damages for the injury to the topsoil on his property. The trial court denied the injunctive relief sought but allowed a money recovery for the injury to plaintiff's land. This, defendant contends, establishes that the trial court found that no nuisance existed and from this it follows that recovery was allowed on the theory of negligence or on the theory of *Rylands v. Fletcher,* (1868) L.R. 3 H.L. 330.①

---

① In the course of the argument on objections to the court's findings, the trial judge engaged in the following colloquy with counsel:

"The Court: Can I interrupt you a minute there, Mr. Banta?

Defendant argues that if the trial court rested its decision on the theory of negligence (in failing to remove promptly the restriction at the close of the irrigation season), this would involve questions of reasonable care, and contributory or comparative negligence all of which were not suggested by the pleadings. On the other hand, it is urged that if the case was decided by the trial court on the theory of *Rylands v. Fletcher,* there was error since that doctrine does not apply to damage caused by the obstruction of waters but only to damage caused by waters which are impounded and escape.

■ The trial court's refusal to grant an injunction does not necessarily negate the existence of a nuisance. Frequently, injunctive relief is denied and yet a money recovery is allowed under the law of nuisance for damages caused as a result of the interference with the plaintiff's use and enjoyment of his land.[2] In the present case the trial court denied injunctive relief because defendant had removed the obstruction which had caused the damage. This was not inconsistent with permitting recovery for a nuisance in the form of an injury to the surface of plaintiff's land.

■■ Defendant's basic asumption that a nuisance by its very nature is a continuing condition is not well founded. There are statements in the cases to this effect, but they do not represent the prevailing view.

"Mr. Banta: Yes.

"The Court: Actually, isn't the impoundment of water in the old case of Rylands v. Fletcher as a matter of law an extra hazardous activity?

"Mr. Banta: If it breaks loose on the fellow below, but not if you're using it * * *."

Defendant regards the foregoing as demonstrating that Rylands v. Fletcher was uppermost in the court's mind in reaching its conclusion.

[2] *See, e.g.,* Levene et ux v. City of Salem, 191 Or 182, 229 P2d 255 (1951).

As noted in the introductory note to Chapter 40 of 4 Restatement of Torts, p. 223 (1939), substantial harm is necessary to liability for private nuisance, and a continuance or recurrence of the condition is often necessary to satisfy this requirement. But if the interference causes substantial harm, it subjects the defendant to liability "however brief in duration the interference may be."[3] The fact that plaintiff alleged a continuing nuisance does not preclude him from proving his case by establishing a nuisance which occurred in a non-recurring fashion.

■ Defendant also seems to assume that if the damage to plaintiff's land occurred as a result of defendant's failure to exercise reasonable care, recovery must necessarily be rested upon a theory of negligence and that this would be the antithesis of the theory of nuisance. As we have pointed out in previous cases, this confuses conduct of the defendant and the invasion of plaintiff's interest. Accepting the analysis of the Restatement of Torts, as we have, a nuisance is the invasion of plaintiff's interest in the reasonable use and enjoyment of his land. That invasion can be caused by defendant's conduct which is either intentional, negligent, reckless or ultrahazardous. On the basis of this analysis, it is improper to contrast negligence with nuisance.[4]

[3] Prosser states that "the duration or recurrence of the interference is merely one—and not necessarily a conclusive—factor in determining whether the damage is so substantial as to amount to a nuisance." Prosser, The Law of Torts § 87, 580 (4th ed 1971). *See also,* Aldridge v. Saxey, 242 Or 238, 243, 409 P2d 184 (1965).

[4] Raymond v. Southern Pacific Co., 259 Or 629, 488 P2d 460, 463 (1971). The position taken by the Restatement of Torts has been criticized by Professor Seavey, it being urged that nuisance should be defined in terms of wrongful conduct which causes interference with the plaintiff's use and enjoyment rather than in terms only of the effect of such conduct. *Seavey,* Nuisance: Contributory Negligence and Other Mysteries, 65 Harv L Rev

■ Using this approach, plaintiff's allegation that defendant's conduct created a nuisance was broad enough to permit plaintiff to prove that defendant negligently created the nuisance. But even if we were to hold that the complaint was not broad enough to permit plaintiff to prove that defendant was negligent, the evidence is sufficient to establish an intentional nuisance.[6] The evidence clearly established that the damage to plaintiff's land was caused by defendant's conduct in restricting the flow of the stream, and that under the circumstances of this case defendant would necessarily know that an invasion of plaintiff's interest in the use and enjoyment of his land was "substantially certain to result from his conduct." (Restatement of Torts, § 825). Moreover, whether defendant's conduct is viewed as intentional or as the failure to exercise care is immaterial in the present case. In either case plaintiff would put on the same evidence to support his claim and in either case de-

984 (1952). This position would not, of course, negate the recognition of nuisance resulting from negligent conduct. Seavey would not, however, recognize that a nuisance exists unless the defendant's conduct is unreasonable either because defendant fails to exercise care, or because he knows that harm is resulting, or is substantially certain to result, or because he *unreasonably* creates an ultrahazardous condition, or *unreasonably* engages in an ultrahazardous activity. Thus defined, a nuisance would not embrace ultrahazardous conditions or activities which are reasonable (liability in such case would be based upon the doctrine of Rylands v. Fletcher or the corresponding American doctrine of ultrahazardous uses); nor would it embrace a non-ultrahazardous act which caused harm to the plaintiff if the defendant did not intend the result. The latter type of case is denominated a nuisance under 4 Restatement of Torts § 822, at least as that section is interpreted by 1 Harper & James, The Law of Torts § 1.24, p. 59 (1956).

[6] "An invasion of another's interest in the use and enjoyment of land is intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct." 4 Restatement of Torts § 825 (1939). In the present case the evidence supports the conclusion that defendant knew that the damage to plaintiff's land was substantially certain to result from his conduct.

fendant would put on the same evidence to prove his defense. In the circumstances of this case the defense of contributory negligence would not be available to defendant.

■ As one writer has observed, "In the usual private nuisance cases * * * there is no opportunity for contributory negligence. The basic cause of action for interference with use of land exists without substantial possibility of mitigating conduct by the occupant."[6] The present case is the type of nuisance case alluded to. Plaintiff had "no opportunity for contributory negligence" in this case. If it had been shown that plaintiff himself had caused part of the damage to his land as a result of the manner in which he dealt with the water after it had come upon his land, defendant would have been entitled to have the damage apportioned on the basis of the harm caused by each of the parties.[7] And defendant would also be entitled to assert the damages rule of avoidable consequences. Both of these principles of mitigation were available to defendant in the present case, whether plaintiff's action is viewed as resting upon negligence or upon intentional conduct. There was no evidence to support either of these principles.

It is defendant's contention that the trial court based its decision on the doctrine of *Rylands v. Fletcher* (1868) L.R. 3 H.L. 330 and that this was error because the doctrine is applicable only to those cases where impounded water escapes from a higher level and damages property at a lower level and does not apply where land is flooded by the backing of

[6] *Seavey*, Nuisance: Contributory Negligence and Other Mysteries, 65 Harv L Rev 984, 988 (1952).

[7] "In such cases, without regard to any question of contributory negligence, the damage caused may be apportioned between the two, as a matter merely of the harm which each has caused." Prosser, The Law of Torts, p. 612 (4th ed 1971).

water. Whether this contention has merit we need not decide because the evidence was sufficient to establish an intentional nuisance within the definition of Section 825 of the Restatement of Torts.

■ The trial court awarded plaintiff $5,000 compensatory damages. Defendant contends that there is no satisfactory proof from which a finding of damages in any specific amount could be predicated. There was testimony from which damages can be specifically calculated, broken down into the cost of reseeding, pasture loss, and crop loss. We think that $5,000, the amount fixed by the trial court as the damages, is a reasonable award.

■ We next consider defendant's counterclaim, in which defendant (1) seeks a declaration that he has a right to use Powder River water flowing in the Erwin irrigation ditch and that he has an easement to transport this water through ditches across plaintiff's land, and (2) seeks compensatory and punitive damages for losses caused when plaintiff leveled its land, allegedly destroying existing ditches and drainage paths and thus preventing defendant from transporting the irrigation water across plaintiff's land. The trial court found that defendant had acquired a right to irrigation water from the Erwin ditch, but found against defendant on all the other issues.

Defendant's claim to an easement is based upon the theory that a water right to irrigate out of the Erwin ditch was adjudicated in defendant's favor in 1912 with a priority of 1888. He argues that this water could only be utilized by carrying it across plaintiff's property and that this easement "was recognized by necessary implication from the conduct and record made by the parties."

The trial court found that defendant had acquired a water right to water flowing adjacent to plaintiff's

land but that there was no evidence establishing an easement to transport the water through ditches across plaintiff's land. We concur in this conclusion. The 1912 adjudication did not establish more than a right to use the water from Erwin; it did not establish any right to maintain ditches on plaintiff's land for the purpose of using the water on defendant's land. There is no evidence that ditches on plaintiff's land were used for this purpose during the prescriptive period. Nor is there evidence from which it can be inferred that the right to use plaintiff's land for this purpose was necessarily implied in the adjudication of 1912.

The decree of the trial court is affirmed.