Argued and submitted April 25, affirmed June 23, 1980

LUNDA, et ux,
*Respondents,*
*v.*
MATTHEWS, et al,
*Appellants.*

(No. 22488, CA 15104)

613 P2d 63

[702-a]

Argued and submitted April 25, 1980.

William M. Holmes, Bend, argued the cause for appellants. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

William E. McCann, Bend, argued the cause and filed the brief for repondents.

Before Richardson, Presiding Judge, Thornton, Judge, and Schwab, Chief Judge.*

RICHARDSON, P.J.

*Schwab, C.J., *vice* Buttler, J.

## RICHARDSON, P.J.

This is an appeal from a judgment in favor of plaintiffs, private landowners, granting damages and injunctive relief in an action for trespass and private nuisance against defendants who operate a cement plant. The evidence viewed in the light most favorable to plaintiffs, who are aided by the verdict, shows the following.

In 1959 plaintiffs purchased their property in a residential/recreational area of LaPine. In 1970, after husband retired, they built a home there and began using the property as their residence. One of the plaintiffs' purposes in moving to LaPine was the clean air. In 1976 defendants constructed the LaPine Readi-Mix Plant about 180 feet north of plaintiffs' house in an area zoned M-2 Industrial. To the north of defendants' plant lies a pole mill where bark is peeled from log poles.[1]

In 1978 defendants added a cement storage silo to their plant. After the silo was constructed defendants began to receive large shipments of dry cement rather than the bagged cement they previously used. The dry cement shipments arrive about every 10 days by tractor-trailer. Deliveries are often at night. The dry cement is blown into the silo from the trailer. As it is blown in, clouds of cement dust permeate the air. This dust is so thick that one cannot see the outline of trees in the area. During the pumping process, vibrators shake the cement down inside the silo. If this process fails, a jack hammer is used to pound on the sides of the silo to pack the cement. The unloading process is very noisy. It takes about two hours to unload a trailer.

The plant begins its operations around 7:00 a.m. but has been known to start as early as 4:00 a.m. Usually five truckloads of ready-mix concrete are carried out of the plant each day. Trucks loaded with

---

[1] There is also a shake mill in the immediate area which is no longer in operation.

gravel also make deliveries to the plant. The gravel is dumped onto the ground and then is loaded into the cement trucks to be mixed with the cement and water.

These various trucks all pass directly by plaintiffs' residence, raising dust which blows into plaintiffs' home. The defendants generally do not water the access road until after 5:30 in the evening when the delivery trucks are washed out. The Department of Environmental Quality contacted defendants after plaintiffs lodged a complaint and cautioned defendants to water more frequently.

Plaintiffs' first count in trespass complained that the cement dust, road dust, noise pollution and diesel fumes emanating from defendants' readi-mix plant interfered with the exclusive possession of their land. They also complained that defendants' use of their property unreasonably interfered with the use and enjoyment of plaintiffs' property and created a private nuisance. In addition to diminished land values, plaintiffs sought damages for inconvenience, annoyance, physical discomfort and mental distress. They also sought injunctive relief.

The jury returned a verdict for $5,000 damages and the court, by way of injunction, required defendants to water the roadway and plant area traversed by motor vehicles to the extent necessary to control the dust, and enjoined defendants from operating the plant or receiving deliveries between the hours of 10:00 p.m. and 6:00 a.m. and all day on Sunday.

Defendants, in their first assignment of error, contend that there was no evidence of either intentional or negligent trespass and that their motion for directed verdict on Count I should have been granted. Where defendants appeal from the denial of a motion for directed verdict we review the evidence in the light most favorable to the plaintiffs. *City of Rogue River v. DeBoer,* 288 Or 485, 488, 605 P2d 697 (1980).

Deposit on a person's land of airborne particles emanating from a neighboring plant has been held to be an invasion of that person's right to the exclusive possession of land. *E.g., Reynolds Metals Company v. Martin,* 337 F2d 780 (9th Cir 1964); *Renken v. Harvey Aluminum (Incorporated),* 226 F Supp 169 (D Or 1963); *Smejkal v. Empire Lite-Rock, Inc.,* 274 Or 571, 579, 547 P2d 1363 (1976); *Martin et ux v. Reynolds Metals Co.,* 221 Or 86, 342 P2d 790 (1959), *cert den* 362 US 918 (1960). Whether the invasion of plaintiffs' property interest is direct or indirect is immaterial in determining whether the invasion is trespassory. *Martin v. Union Pacific Railroad,* 256 Or 563, 474 P2d 739 (1970); *Davis v. Georgia-Pacific,* 251 Or 239, 445 P2d 481 (1968).

A trespass may arise from an intrusion upon plaintiffs' land which is either intentional, negligent or the result of ultrahazardous conduct. *Martin v. Union Pacific Railroad, supra.* Intentional is used in this context to mean that the acts setting in motion the invasion were done with knowledge that a trespass would result and not that the acts were done for the specific purpose of causing a trespass or injury. *Union Pacific Railroad Co. v. Vale, Oregon Irrigation Dist.,* 253 F Supp 251, 258 (D Or 1966); *Fairview Farms, Inc. v. Reynolds Metals Company,* 176 F Supp 178, 184 (D Or 1959); *cf. Phillips Ranch, Inc. v. Banta,* 273 Or 784, 791, 543 P2d 1035 (1975); *Jacobson v. Crown Zellerbach,* 273 Or 15, 19, 539 P2d 641 (1975); *Gronn et ux v. Rogers Construction, Inc.,* 221 Or 226, 231, 350 P2d 1086 (1960); *cf., Hudson v. Peavey Oil Company,* 279 Or 3, 6, 566 P2d 175 (1977). There is evidence that the defendants knew that dust, debris, fumes and operational noise invaded plaintiffs' property and interfered with their exclusive possession.[2]

---

[2] The record shows that the dust was obvious to all the neighbors. When defendants were informed by plaintiffs of the effects of their business on plaintiffs' property, wife was essentially told to "go to hell."

Defendants, in their second assignment, contend that their motion for directed verdict on plaintiffs' count for private nuisance should have been granted.

To constitute an actionable private nuisance the defendants' interference with plaintiffs' use and enjoyment of their land must be both substantial and unreasonable, *Jewett v. Deerhorn Enterprises, Inc.,* 281 Or 469, 575 P2d 164 (1978).

The cement plant produced clouds of dust which covered everything in sight, substantial noise at all hours, and noxious fumes. Defendants do not seriously contend that their interference with plaintiffs' use and enjoyment of their land was not substantial. Rather, they appear to argue that it was reasonable. They contend first that their invasion was not intentional. We have disposed of this argument above. In any event, as defendants recognize in their own brief, nuisance refers to the interest invaded and not to any type of culpable conduct. *Mikan v. Valley Publishing, Inc.,* 38 Or App 287, 289, 589 P2d 1201 (1979). They next argue that the operation of their plant was not unreasonable because it was operated as any other cement plant. This argument was rejected in *Kramer v. Sweet,* 179 Or 324, 328, 169 P2d 892 (1946). They also contend that the use of their property was reasonable as a matter of law because it was in an area zoned for that type of business. Zoning legislation only permits certain general classifications of uses of property. Zoning is not an approval of the manner of conducting a business which causes a private nuisance. *E.g., Richards v. Washington Terminal Co.,* 233 US 546, 553, 34 S Ct 654, 58 L Ed 1088, LRA 1915A 887 (1914); *Commerce Oil Refining Corp. v. Miner,* 281 F2d 465, 468, 86 ALR2d 1307 (1st Cir 1960)(construing R.I. Law); *Hobbs v. Smith,* 177 Colo 299, 493 P2d 1352, 1354 (1972); *Bauman v. Piser Undertakers Co.,* 34 Ill App2d 145, 180 NE2d 705, 708 (1962); *Schlotfelt v. Vinton Farmers' Supply Co.,* 252 Iowa 1102, 109 NW2d 695 (1961); *Weltshe v. Graf,* 323 Mass 409, 82 NE2d

795 (1948); *Urie v. Franconia Paper Corp.* 107 NH 131, 218 A2d 360, 362 (1966); *Sakler v. Huls,* 20 Ohio Op 2d 283, 183 NE2d 152 (1961); *Barnes v. Quarries, Inc.,* 204 Va 414, 132 SE2d 395 (1963); *Turner v. Spokane,* 39 Wash2d 332, 235 P2d 300, 302 (1951).

Finally, defendants argue that the operation of their plant was reasonable as a matter of law because they had secured an air contaminant discharge permit from the Department of Environmental Quality and they had not been cited for violation of the fallout standards. Conformance with pollution standards does not preclude a suit in private nuisance, ORS 468.100(4);[3] *Renken v. Harvey Aluminum (Incorporated), supra,* 266 F Supp at 175-76.

Looking to the guidelines set out in *Jewett v. Deerhorn Enterprises, Inc., supra,* 281 Or at 473, we note that the cement plant is located very near to plaintiffs' home. The intrusion is on a daily basis. Plaintiffs testified that they are not able to enjoy their retirement home, that they cannot often be outdoors during the day and that they have to close up their house to keep the dust from entering even on very hot summer days. The area to the south of defendants' plant is residential in character, and it was a residential neighborhood long before defendant located its plant there, *see Kramer v. Sweet, supra.* There was sufficient evidence to go to the jury on plaintiffs' count for private nuisance.

[3] ORS 468.100(4) provides:

> "The provisions of this section are in addition to and not in substitution of any other civil or criminal enforcement provisions available to the commission or a regional authority. The provisions of this section shall not prevent the maintenance of actions for legal or equitable remedies relating to private or public nuisances brought by any other person, or by the state on relation of any person without prior order of the commission."

In addition, the defendants' discharge permit states:

> "G8. The issuance of this permit does not convey any property rights in either real or personal property, or any exclusive privileges, nor does it authorize any injury to private property or any invasion of personal rights, nor any infringement of Federal, State or local laws or regulations."

[707]

In assignment of error number three, defendants argue that their motion to strike plaintiffs' allegations of inconvenience, annoyance, physical discomfort and mental distress should have been granted.

Distinct from or in addition to damages compensating plaintiffs for the diminution in property value as a result of a nuisance, it is proper to award consequential damages for discomfort, annoyance, inconvenience and personal injury. *Spencer Cr. Pol. Con. v. Org. Fertilizer,* 264 Or 557, 563, 505 P2d 919 (1973); *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 419, 495 P2d 1193 (1972); *Porges v. Jacobs,* 75 Or 488, 493, 147 P 396 (1915). Consequential damages are also recoverable in actions for trespass. D. Dodds, Remedies 344 (1973).

In their fifth assignment of error, which we will consider here, defendants contend that plaintiff husband's testimony concerning the worsening of his bronchitis and emphysema was inadmissible, and that the claims in plaintiffs' complaint for husband's illnesses should have been stricken. Defendants argue that the standard to establish whether a nuisance exists depends on whether the defendants' use of their property would interfere with an ordinary, reasonable person's use and enjoyment of his property, *Jewett v. Deerhorn Enterprises, Inc., supra; Amphitheaters, Inc. v. Portland Meadows,* 184 Or 336, 349, 198 P2d 847, 5 ALR2d 690 (1948), and since defendant is physically ill he is not a person of ordinary sensibilities, citing *Aldridge v. Saxey,* 242 Or 238, 248, 409 P2d 184 (1965).

What the defendants fail to realize is that once facts are introduced which could establish a nuisance based on an interference with a normal, reasonable person's use and enjoyment of land, a particularly susceptible plaintiff may recover for physical discomfort from the effects of that nuisance separately and distinctly from the damage to his property.

Plaintiffs may also recover for mental anguish which is the direct result of defendants' trespass, *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968). The anguish suffered may be the result of a continuous invasion of plaintiffs' property over a long period of time. *Senn v. Bunick,* 40 Or App 33, 39, 594 P2d 837, *rev den* 287 Or 149 (1979). Likewise, damages for emotional distress may be recovered in actions for nuisance where the injury is the result of defendants' interference with the use and enjoyment of plaintiffs' land. *Edwards v. Talent Irrigation District,* 280 Or 307, 310, n 4, 570 P2d 1169 (1977); *Macca v. Gen. Telephone Co. of N.W., supra,* 262 Or at 418-20.

The question is one of the sufficiency of the proof that the anguish was caused by defendants' trespass or the nuisance defendants created. Plaintiffs testified that they were very concerned over the loss in value of their home because they are retired and on a fixed income. They also were distressed because they had moved from the Willamette Valley to escape the air pollution only to have this purpose frustrated by defendants' pollution of the area. Further, they testified that they suffered anguish in not being able to be out of doors and enjoy their yard and flowers. Finally, they were agitated over the potential health hazard of continually breathing the dust-laden air. Any anguish plaintiffs suffered is causally linked to their concern over the affects of defendants' trespass and the resulting nuisance. The allegation of emotional distress, annoyance, inconvenience and aggravation of husband's illness was properly submitted to the jury.

In the fourth assignment of error defendants contend that the court erred in failing to strike plaintiffs' allegation concerning diminution in the value of their real estate because there was no proof of damage.

Plaintiff wife testified that their residence was worth "at least $50,000" if the readi-mix plant was not

in operation. She then testified that with the readi-mix plant there the property was worth $10,000.

The Supreme Court has held that an owner of property is competent to give an opinion regarding its fair market value and diminution in value, *e.g., Searcy v. Bend Garage Company,* 286 Or 11, 17, 592 P2d 558 (1979); *Hanns v. Friedly,* 181 Or 631, 184 P2d 855 (1947). There is an exception to this rule where it is shown that the owner has *no* knowledge of the market value of the property in spite of ownership. *Powell v. Hartman,* 37 Or App 455, 587 P2d 506 (1978)(dicta). Defendants attempt to invoke that exception because on cross-examination plaintiff wife admitted that she was not familiar with other real estate values in LaPine and that she had not offered the property for sale. Defendants' argument fails for at least two reasons; first, the evidence does not establish that plaintiff wife has *no* knowledge of the value of her property. She purchased the property in 1959, constructed the residence in 1970 and has lived there since that time. Secondly, defendants did not challenge the competency of her testimony—they only moved to strike the allegation of damage on the ground that no evidence had been presented to establish diminution in value. Plaintiff wife was competent to testify and the trier of fact was free to accord it whatever weight it deserved.

Finally, in assignment of error number six, defendants argue that the court erred in granting injunctive relief. Many of the arguments defendants raise are the same as those discussed under the second assignment of error. There is evidence that defendants caused substantial harm to plaintiffs' interest in the exclusive possession of their land and in its use and enjoyment. There is ample evidence to support a finding that defendants acted unreasonably in the sense that the harm to plaintiffs was greater than they should be required to bear.

[710]

The injuction balanced the needs and interests of the parties. It did not close down defendants' business. It only enjoined defendants from operating during nighttime hours and imposed the condition that defendants water the road to prevent excessive road dust. The injunction only restricts defendants from operating their plant at such times and in such a manner as would unreasonably interfere with plaintiffs' use and enjoyment of their property.

Affirmed.