Argued and submitted March 21, reversed and remanded July 11, petition for review denied October 4, 2007 (343 Or 223)

NORTHWEST NATURAL GAS COMPANY,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

Asad SHIRAZI,
*Defendant-Appellant,*

*and*

WASHINGTON MUTUAL BANK
and Herman Vandehey,
*Defendants.*

Washington County Circuit Court
C040775CV; A130108

162 P3d 367

George W. Kelly argued the cause and filed the brief for appellant.

James N. Westwood argued the cause for respondent. With him on the brief was Stoel Rives LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

**SCHUMAN, J.**

The parties in this condemnation case could not agree on the amount of compensation due to defendant as a result of plaintiff's construction and operation of an underground natural gas pipeline across defendant's property. A trial ensued, and the jury awarded defendant $21,691.25 as compensation for the taking—considerably less than he sought. Defendant appeals, assigning error to two of the trial court's evidentiary rulings: its decision to allow plaintiff to elicit evidence of what defendant paid for the property in 1993, 11 years before the condemnation, and its decision not to allow defendant to elicit testimony from a nearby property owner about the diminution of value in that person's property after installation of a similar natural gas pipeline. We conclude that, even if admitting evidence of the 1993 transaction was error, we cannot determine that it was prejudicial; we therefore reject that assignment of error. However, we also conclude that the court's refusal to allow the nearby property owner's testimony was error and that it was prejudicial. We therefore reverse and remand.

Because the recording of the trial is inaudible, the parties agreed on a narrative statement, ORS 19.380, from which we take the following facts. Since 1993, defendant has owned two contiguous lots in Washington County totaling 101.43 acres. The land is used primarily for farming, but defendant's residence and several outbuildings are on it as well. In 2004, during construction of a high pressure natural gas pipeline, plaintiff exercised its power of eminent domain under ORS chapter 772 to take from defendant two temporary easements that were necessary to install and bury the pipe, and a permanent easement to accommodate the finished project. The temporary easements occupied approximately two and one-half acres. The permanent easement is 40 feet wide and 2,131 feet long, or 1.957 acres, crossing defendant's property approximately 700 feet from his residence. Defendant was not satisfied with the amount that plaintiff offered as compensation. When negotiations between the parties failed, plaintiff brought this condemnation action.

At trial, two significant disagreements between the parties emerged. One dealt with the land comprising the permanent easement—that is, the land under which the pipeline ran. Defendant argued that this land was worth $10,000 per acre; that the easement reduced its value by 60 percent; and that, as he calculates it, he should therefore be compensated for a loss of $11,754 (60 percent of the value of 1.957 acres at $10,000 per acre). He based his estimate on his own opinion and his knowledge of comparable sales; he did not retain an appraiser or any other expert. In cross-examining defendant after his testimony about the land's value, plaintiff's counsel asked defendant what he had paid for the land when he bought it in 1993. Defendant's counsel objected, arguing that the information was too remote in time. The court disagreed, and defendant then testified that he had purchased the property for $400,000, or approximately $4,000 per acre (including the residence).

Based on the testimony of an expert appraiser, plaintiff claimed that the land was worth only $8,000 per acre and that the easement reduced its value by only 50 percent, resulting in compensation owed to defendant in the amount of $7,828 (50 percent of the value of 1.957 acres at $8,000 per acre).

The second, and far more significant, dispute dealt with the reduction in value to the entire acreage caused by the existence of the pipeline. Defendant contended that the buried natural gas pipeline presented at least the perception of hazard and therefore created a market disincentive reducing the value of his parcels by 20 percent, or $352,860. Plaintiff, in response, presented two experts. One testified that, in his opinion, the pipeline was unusually safe. The other expert, an appraiser, estimated that the reduction in value to the surrounding property was less than one percent and, in effect, would not even be taken into consideration by potential buyers. On rebuttal, defendant sought to introduce the testimony of a nearby landowner, Livermore. Plaintiff objected. In an offer of proof, Livermore testified that his 20-acre farm was worth $1.2 million before installation of a pipeline and that, after installation, the property brought only $905,000, a reduction in value that Livermore attributed to the presence of the pipeline. The trial court sustained

plaintiff's objections to the proffered evidence, ruling that Livermore was not competent to testify as an expert and that, even if the evidence were competent, its tendency to confuse the issues, mislead the jury, and invite multiple "minitrials" outweighed its probative value. OEC 403.

The jury returned a general verdict awarding defendant $21,691.25 as compensation for the taking.

■     On appeal, defendant argues that the trial court erred in allowing plaintiff to adduce evidence of the 1993 purchase price and in not allowing defendant to elicit evidence from Livermore about the reduction of value in his property. We begin with the dispute over the 1993 purchase price. In addition to the argument that the age of the information renders it irrelevant under OEC 401,[1] defendant also argues that, even if it is relevant, the information nonetheless had such a tendency to mislead the jury that it should have been rejected under OEC 403.[2] Plaintiff raises numerous arguments in response. First, plaintiff argues that defendant's objection that the 11-year-old value was too remote preserved only a claim that the evidence was not relevant under OEC 401, not a claim under OEC 403 that the probative value of the evidence was substantially outweighed by the danger of prejudice, confusion of the issues, misleading the jury, or undue delay. Further, even if defendant's objection was sufficient to preserve a challenge under OEC 403, plaintiff argues, the court did not abuse its discretion by admitting the evidence. Finally, plaintiff argues that, even if admitting the evidence was error, we should not reverse the court's decision because we cannot conclude that the asserted error caused prejudice to defendant. Because we agree with plaintiff's final argument, we do not address whether admitting the evidence was error.

---

[1] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Under ORS 19.415(2), we may reverse or modify a judgment only if there was "error substantially affecting the rights of the party." *See also* OEC 103(1) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). In *Shoup v. Wal-Mart Stores Inc.*, 335 Or 164, 173-74, 61 P3d 928 (2003), the Supreme Court explained:

> "The possibility that an error might have resulted in a different jury verdict is insufficient under the statute. Instead, the court must be able to conclude, from the record, that the error 'substantially affect[ed]' the rights of the losing party. Moreover, the statute protects the trial court judgment from reversal or modification 'except for' error substantially affecting a party's rights, indicating that reversal of a judgment is the exception, not the rule. The rule embodied in ORS 19.415(2) * * * places the burden to make a record that demonstrates prejudicial error on whichever party loses in the trial court and then seeks reversal or modification of the judgment on appeal."

Under the *Shoup* rationale, the court in *Lyons v. Walsh & Sons Trucking Co., Ltd.*, 337 Or 319, 325-26, 96 P3d 1215 (2004), held that, where the jury verdict did not specify which rationale the jury relied on, and only one of the possible rationales was assertedly erroneous, the asserted errors were not grounds for reversal, because the court could not conclude that the asserted errors "substantially affected" the party's rights. Again, in *Jackson v. Robbins*, 192 Or App 372, 376, 86 P3d 67 (2004), we held that the plaintiff could not demonstrate that an asserted error substantially affected his rights where the court could not determine which of two rationales the jury relied on in finding that the plaintiff was 90 percent at fault.

By the same reasoning, we cannot determine on the record before us in this case whether the asserted error caused prejudice to defendant. Prejudice caused by the asserted error would have resulted from the fact that the 1993 purchase price caused the jury to miscalculate the 2004 value of the property, that is, to accept plaintiff's contention that the land was not worth as much at the time of condemnation as defendant claimed. That "miscalculation" could

have influenced the verdict only if the verdict was, in fact, based on a jury finding that the land was not worth as much at the time of condemnation as defendant claimed. Yet it is possible that the jury reached its verdict having *accepted* defendant's estimate, that is, without any reliance on or reference to the assertedly erroneously admitted evidence.

The jury returned a verdict on the compensation claim stating, in its entirety: "We the jury, duly empaneled to try the above action, find just compensation to which defendant Asad Shirazi is entitled to the sum of $21,691.25." Defendant claimed that the land comprising the easement was reduced in value by $11,754. That figure, in turn, follows from defendant's estimate that the 1.957 acres were worth $10,000 per acre and the easement reduced the value by 60 percent. It is therefore possible that the jury agreed with defendant on that figure (or, in other words, did not accept the lower per acre value that the assertedly erroneously admitted 1993 purchase price might have implied) and determined that the remainder of defendant's property was diminished in value by $9,937.25. That number, in turn, might have derived from the jury's belief that defendant's remaining property was worth $990,000, as his figures implied (approximately 99 acres at $10,000 per acre), and that the easement reduced that amount by one percent, as plaintiff's expert testified. If that is how the jury calculated, then the assertedly erroneous admission of the 1993 purchase price caused no prejudice. The jury, despite that evidence, accepted defendant's estimate of the land's value. It also accepted plaintiff's estimate of the percentage reduction in value caused by the easement, but the erroneously admitted evidence had no bearing on that figure.

Of course, it is also possible that the jury *was* misled by the 1993 purchase price, and, as a result, awarded defendant $21,691.25 based on plaintiff's argument that the property underlying the easement lost only $7,828 in value and the remaining property lost $13,863.25 in value because it was worth $792,000 (approximately 99 acres at the assertedly erroneously deflated price of $8,000 per acre) and the existence of the easement reduced that value by 1.75 percent. We simply cannot tell. Because the verdict form did not ask the jury to disclose its rationale, and because it might have

used a rationale that was independent of any assertedly erroneously admitted evidence, we must conclude that defendant failed to show that the evidence caused him prejudice. We therefore reject defendant's first assignment of error.

We turn, then, to the second assignment of error: the exclusion of Livermore's testimony regarding the diminution in the value of his land caused by a pipeline. Defendant contends that Livermore was competent to testify as to the value of his land and to its diminution of value; that such testimony was relevant to the issue before the jury in this case; and that the testimony's probative value would not have been substantially outweighed by unfair prejudice, confusion, or delay. Plaintiff responds that Livermore was not competent to present the disputed testimony because such testimony "could come only from an expert"; that, in any event, because Livermore's property was not comparable to defendant's, Livermore's testimony was not relevant to "valuation of an easement across defendant's property"; and that, finally, even if the testimony was competent, it was "more confusing and misleading to the jury than it would be helpful." The trial court agreed with plaintiff. We conclude that plaintiff's arguments have no merit.

■ It is well settled that the owner of property can testify as to the value of his or her own property and to the diminution in its value resulting from, for example, the construction of a nearby cement plant. *Lunda v. Matthews*, 46 Or App 701, 709-10, 613 P2d 63 (1980) (citing *Searcy v. Bend Garage Company*, 286 Or 11, 17, 592 P2d 558 (1979), and *Hanns v. Friedly*, 181 Or 631, 641, 184 P2d 855 (1947)). Under that rule, Livermore was competent to present the proffered testimony. Further, if a landowner is competent to testify as to the diminished value of his or her own land when he or she is a party, we see no reason why that competence would not extend to cases in which he or she is not a party. As defendant puts it: "[T]he rule that owners can testify as to the value of their property is a rule about competence, and competence is not affected by party status."

■ The distinction between a party's testimony about his or her property and a nonparty witness's similar testimony bears, not on competence, but on relevance. Thus,

plaintiff may be correct that Livermore's testimony about the amount of pipeline-caused diminution of value to his property would be of only marginal relevance to the amount of pipeline-caused diminution of value to defendant's property, depending on the extent to which the two properties and the two pipelines were similar. However, Livermore's testimony was not offered for that purpose. Rather, it was offered to rebut testimony from plaintiff's appraiser stating that the *general effect* of a buried natural gas pipeline on property is insignificant. Indeed, plaintiff's expert testimony on the effect of pipelines on property values was identical in its underlying logic to defendant's. Plaintiff's expert

> "testified to PGO Valuation studies showing that overall the market does not discount properties because of the presence of a pipeline on the property. [The expert's] firm had conducted a study of the 'Williams' pipeline, built in the Portland area in 1995, and updated the study to include sales along the NW Natural pipeline. The Williams pipeline (30" in diameter) was larger than the NW Natural pipeline (24" diameter). According to [the expert], a comparison of sales of properties through which the pipeline traveled, with sales of properties nearby but through which the pipeline did not travel, demonstrated a pipeline-related value loss of 0.25% on the east side of Portland; and on the west side of Portland, a loss of 0.85%. [The expert] also testified there had been other studies by gas pipeline companies concerning the effect of pipelines on property values. [The expert] concluded that value losses of 0.25% and 0.85% were without statistical significance in property valuation."

Thus, plaintiff presented testimony that pipelines generally do not reduce the value of properties on which they are located. That testimony was not based on similarity between the particular properties studied and defendant's property. Solely to rebut that testimony, defendant proffered Livermore's testimony that, in at least one case, the presence of a pipeline *did* reduce the value of the property. Livermore's testimony therefore was not only competent, it was also highly relevant.

■■ Plaintiff finally argues that, even if the testimony was competent and relevant, it was inadmissible under OEC 403 because the potential that the evidence would confuse or

mislead the jury or delay the proceeding significantly outweighed the evidence's probative value. We review for abuse of discretion. *State v. Williams*, 313 Or 19, 29, 828 P2d 1006, *cert den*, 506 US 858 (1992). Plaintiff was allowed to present testimony, through an appraiser, stating that the diminution of defendant's property value caused by the pipeline was statistically insignificant. Without Livermore's rebuttal testimony, the jury did not have any evidence, other than defendant's assertions, that the pipeline would affect the value of the entire property. Therefore, the probative value of Livermore's testimony was significant; to the extent it was not, that deficiency could easily have been demonstrated through cross-examination. Further, the trial court's concerns that Livermore's testimony would create potential confusion and invite a "minitrial" are misplaced in this context. Plaintiff's own expert offered extensive and technical testimony on the very same subject matter; once plaintiff opened the door in that regard, defendant was entitled to offer his own evidence in rebuttal, even if the result would have been a "minitrial" on that issue. Although this court gives deference to the trial court's evidentiary ruling under OEC 403, *Williams*, 313 Or at 29, we conclude that the trial court abused its discretion when it excluded Livermore's testimony.

Reversed and remanded.