## ANNEBERG *v.* KURTZ.

No. 14717. JANUARY 7, 1944.

*J. G. Roberts,* for plaintiff.   *Blair & Carmichael, George D. Anderson* and *John T. Dorsey,* for defendant.

ATKINSON, Justice. (After stating the foregoing facts.) ■ The defendant, in an amendment to his answer, admitted that he had been operating a canning plant and dumping tomato peelings and refuse from the plant into the creek; but alleged a prescriptive easement so to do by reason of having done so from June 1st to November 1st of each year for the past thirty-three years. This presents two questions for decision: (1) Can an easement by prescription ripen by reason of such seasonal use of the stream? (2) Would these acts, though amounting to a private nuisance, ripen into a prescriptive easement?

The Code, § 85-1301, declares: "Running water, while on land, belongs to the owner of the land, but he has no right to divert it from the usual channel, nor may he so use or adulterate it as to interfere with the enjoyment of it by the next owner." Section 105-1407 declares: "The owner of land through which non-navigable watercourses may flow is entitled to have the water in such streams come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other riparian proprietors; and the diverting of the stream, wholly or in part, from the same, or the obstructing thereof so as to impede its course or cause it to overflow or injure his land, or any right appurtenant thereto, or the pollution thereof so as to lessen its value to him, shall be a trespass upon his property." Section 85-401 declares: "Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by the laws." Section 85-402 declares: "Possession to be the foundation of a prescription must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right. Permissive possession cannot be the foundation of a prescription, until an adverse claim and actual notice to the other party." Section 85-409 declares: "An incorporeal right which may be lawfully granted, as a right of way or the right to throw water upon the land of another, may be acquired by prescription." "Adverse possession, must be made up of acts, which are open, visible, notorious, and continuous." *Denham* v. *Holeman, 26 Ga.* 182 (7) (71 Am. D. 198); *Roe* v. *Doe, 30 Ga.* 971 (2); *Kirschner* v. *Western and Atlantic Railroad Co., 67 Ga.* 760; *Graham* v. *Mitch-*

*ell,* 78 *Ga.* 310; *Clark* v. *White,* 120 *Ga.* 957 (48 S. E. 357); *Bradley* v. *Shelton,* 189 *Ga.* 696 (2) (7 S. E. 2d, 261).

In *Hogan* v. *Cowart,* 182 *Ga.* 145 (2) (184 S. E. 884), it was held that an owner of land may acquire by prescription an easement over the lands of another to use an open agricultural ditch extending from his lands through the lands of an adjoining proprietor for the purpose of drainage, whether or not the prescriber ever actually entered or occupied such adjacent lands. In *Watkins* v. *Pepperton Cotton Mills,* 162 *Ga.* 371 (134 S. E. 69), where the owner of a public swimming-pool located on a creek sought to enjoin a cotton mill from discharging sewage from its mill property and certain dwellings into the creek, it was held that having done so for more than twenty years, the cotton mill had acquired an easement.

But the point here presented goes beyond whether or not an easement to pollute a non-navigable stream can be acquired by prescription. It raises the question whether or not the pollution of this stream during the canning season from June 1st to November 1st in each year for more than twenty years was sufficiently continuous and uninterrupted to meet the requirements of title by prescription and adverse possession, or whether the failure to use it during the other months of the year would constitute such interruption as would break the continuity of its use. The precise question here presented has not been ruled upon by this court.

In *Walker* v. *Steffes,* 139 *Ga.* 520 (9) (77 S. E. 580), it is said: "The rule requiring continuity of possession is one of substance and not of absolute mathematical continuity, provided there is no break so as to make a severance of two possessions." In 17 Am. Jur. 972, § 60, it is said: "The uninterrupted and continuous enjoyment of a right of way necessary to constitute adverse possession does not require the use thereof every day for the statutory period, but simply the exercise of the right more or less frequently according to the nature of the use." See also 2 C. J. 100, § 134, note 7; 2 C. J. S. 681, § 125. In Park *v.* Powers, 2 Cal. (2d) 590 (42 Pac. 2d, 75), it was said: "Where inclosed land suitable for grazing and pasturage is occupied each year during the entire season therefor, as from May until late October or November, possession is 'continuous' within adverse possession statute." Adverse possession includes the following: The use of an irrigation ditch "dur-

ing the cropping season." Hesperia Land & Water Co. *v.* Rogers, 83 Cal. 10 (23 Pac. 196, 17 Am. St. R. 209). Also, "whenever needed . . during the irrigation season." Glantz *v.* Gabel, 66 Mont. 134 (212 Pac. 858). Use of a right of way "whenever it is needed." Myers *v.* Berven, 166 Cal. 484 (137 Pac. 260). Use of a fishery "every year at the proper season." McLellan *v.* McFadden, 114 Maine, 242 (95 Atl. 1025). Raising a dam "during the months of April, May, and June in each year, for the purpose of sluicing logs." Swan *v.* Munch, 65 Minn. 500 (67 N. W. 1022, 35 L. R. A. 743, 60 Am. St. R. 491). Where a lake covered land of an adjoining owner, "occasionally letting off the water," this did not constitute such interruption as would break its continuity. Alcorn *v.* Sadler, 71 Miss. 634 (14 So. 444, 42 Am. St. R. 484). As to the use of an irrigation ditch "whenever necessary," it was said that "what constitutes continuity of use will depend altogether upon the nature and character of the right claimed." Hays *v.* DeAtley, 65 Mont. 558 (212 Pac. 296). In 9 R. C.,L. 774, § 34, it is said: "The correct rule as to continuity of user, and what shall constitute such continuity, can be stated only with reference to the nature and character of the right claimed. An omission to use when not needed does not disprove a continuity of use, shown by using it when needed, for it is not required that a person shall use the easement every day for the prescriptive period. It simply means that he shall exercise the right more or less frequently, according to the nature of the use to which its enjoyment may be applied." Accordingly, we hold that where a person in the operation of a canning plant has, from June 1st to November 1st in each year, for more than twenty years, emptied the refuse from the plant into a non-navigable stream, he has thereby acquired a prescriptive right so to do.

There is nothing held here contrary to what is said in *Goble* v. *Louisville & Nashville Railroad Co.,* 187 *Ga.* 243 (7) (200 S. E. 259), as there the ruling was that the mere maintaining of a trestle under which a stream flows does not thereby ripen into a prescriptive easement to flood lands; it appearing from the evidence that there was no definite water level ever maintained sufficient to ripen prescription, as the water level was constantly changing due to climatic conditions and to the floating of logs against the trestle.

■ The plaintiff having set forth sufficient allegations in her

petition in reference to the results, as affecting her property, of the defendant dumping into this stream the refuse from a canning plant, so as to constitute a private nuisance, the next question for determination is whether or not the right to maintain a private nuisance may be acquired by prescription. She insists that "a person never can, by prescription or otherwise, acquire a right to maintain a nuisance," and predicates her position on the foregoing quotation from the concurring opinion of Judge Lumpkin in *Bonner* v. *Welborn,* 7 *Ga.* 296, 327; and also appearing in the following cases: *City Council of Augusta* v. *Lombard,* 101 *Ga.* 724, 728 (28 S. E. 994); *Williams* v. *Southern Railway Co.,* 140 *Ga.* 713 (79 S. E. 850); *Goble* v. *Louisville & Nashville Railroad Co.,* 187 *Ga.* 254 (supra). It was pointed out in *Watkins* v. *Pepperton Cotton Mills,* supra, that this statement of Judge Lumpkin in *Bonner* v. *Welborn,* and quoted in *Williams* v. *Southern Railway Co.,* supra, was obiter, and the reasons there given need not be repeated here. So also is it obiter, as stated in *City Council of Augusta* v. *Lombard* and *Goble* v. *Louisville & Nashville Railroad Co.,* supra. In the *Augusta* case the question there involved was "whether the cause of action was barred by the statute of limitations, the petition showing on its face that the alleged wrongful removal of the water-gates occurred more than four years before the filing of the suit, but that the special injury complained of occurred within less than that time." And in the *Goble* case, as has already been pointed out in the first division of this opinion, the ruling was that the mere maintaining of a trestle under which a stream flows does not thereby ripen into a prescriptive easement; it appearing from the evidence that there was no definite water level ever maintained sufficient to ripen prescription, as the water level was constantly changing due to climatic conditions and to the floating of logs against the trestle. While the foregoing cases have stated that a right to maintain a nuisance cannot be acquired by prescription, still no such direct ruling has ever been made as relating to a private nuisance.

On the other hand there is positive and controlling authority in this State to the effect that the right to maintain a private nuisance may be acquired by prescription. In *Watkins* v. *Pepperton Cotton Mills,* supra, dealing with the pollution and adulteration of the waters of a non-navigable stream, the question whether

194

the right to maintain a private nuisance could be acquired by prescription was directly made and passed upon by this court on an objection to the charge of the trial judge. In that case it was held: "The right to maintain a private nuisance may be acquired by prescription. This is especially true in this case where the nuisance is in the nature of an easement." The decision says further: "In *Phinizy* v. *City Council of Augusta,* 47 *Ga.* 260, 268, Judge McCay expressed the compelling reason for distinguishing between a public and a private nuisance on the question of prescription. He said: 'The rule that the statute of limitations does not run in favor of a nuisance only applies to public nuisances, and grows out of the impropriety of imputing laches to the public: 7 East, 195; 4 Burrows, 2163; 4 Mass. 522 [3 Am. D. 236]; 42 Maine, 150. On the other hand, it is laid down in Angell on Watercourses, as a general rule, that the special right to a use of a watercourse, or to flow water upon the land of another, may in all cases be acquired by prescription: Angell on Watercourses, § 200. And he says again, § 206, "We are aware of no authority, English or American, which gainsays the doctrine that the upper proprietor of land may, by use for a sufficient period of time, acquire a right to keep open an ancient agricultural drain or ditch through land below, for the purpose of draining his own premises." One can acquire the right to the land itself by use and possession, and it would be strange if one could not acquire by the same method a mere easement over it. And the books are full of cases acknowledging the right: 1 B. & P. 400; 3 East, 294; 11 East, 371; 6 East, 208; 1 Camp. 263; 2 Brod. & Bing. 667; 1 Sim. & Stuart, 203; 3 B. & A. 76.'"

The court did not err in overruling the demurrer to the answer, and in refusing to grant a temporary injunction.

*Judgment affirmed. All the Justices concur, except Duckworth, J., who dissents, and Jenkins, P. J., absent on account of illness.*