PRIJATEL ET AL. *v.* SIFCO INDUSTRIES, INC., ET AL.*

(No. 917518—Decided December 3, 1974.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Schulman & Schulman* and *Mr. Milt Schulman,* for plaintiff.

*Messrs. Squire, Sanders & Dempsey* and *Mr. Eben G. Crawford,* for defendants.

HITCHCOCK, J. (By assignment from Paulding County.) Plaintiffs, 18 individuals residing in Cleveland in the vicinity of St. Clair Ave. and E. 64th St., charge defendants with maintaining a private nuisance and ask that their activities be enjoined in the future and that damages be paid for past conduct.

Defendants, Sifco Industries, Inc., and its subsidiary division, The Steel Improvement & Forge Company (Forge) operate a modern industrial forge shop at 970 E. 64th St., and at this location have continuously done so since 1928. The plant consists of several large factory buildings, office buildings, and facilities for storage and auxiliary operation. It occupies an area of about 350,000 square feet bounded on the north by sidings of the Pennsylvania (now Penn

---

*Judgment affirmed by Court of Appeals, February 5, 1976. Appeal dismissed by Supreme Court, September 10, 1976.

Central) railroad; on the south by Spilker Ave. and a fence running between E. 63rd and E. 64th Sts. Another area of roughly the same size lies immediately north of mentioned sidings and to the south of a wide right of way belonging to the New York Central (now Penn Central) railroad. Also, about ½ mile north-northwest of the present plant location is the south shore of Lake Erie.

When this cause was heard in December, 1973, and January, 1974, defendants at this plant were employing 98 salaried persons and 406 hourly workers. Throughout the past 10 years this total number of employees has almost always been within 10%, plus or minus, of the present number of 504. Most of the plaintiffs leave their residences to go to work, and are not employed in the vicinity of their residence.

Plaintiffs assert that the noise and vibration emanating from the forge shop's operation are so severe and unbearable as to constitute a nuisance enjoinable by the court and justifying damages by reason of past injury to persons and property. By agreement of counsel the evidence and issues in the trial were confined to the injunction issue

Also, a request by some plaintiffs that this action be declared a class action in behalf of others allegedly similarly situated, was denied.

There were 14 plaintiffs who initiated this action; one of those withdrew before trial, and at the trial five other individuals were given leave to become parties plaintiff. During the years 1943-1945 (when the forge shop was in full wartime production 24 hours per day) similar suits were brought by about 64 owners of 34 tracts of land in the vicinity. All of these were settled and dismissed. The court finds these cases have no relevance to the present controversy in law and/or in fact because since World War II there has been no 24-hour operation; only 16-hour operation with a few overtime hours upon occasion.

The court has carefully considered all of the evidence presented in a nine-day trial and has considered every authority and precedent called to the court's attention.

A fair preponderance of the evidence establishes that defendants do operate a forge shop of large proportions and that it does produce noise and vibration such that its

operation would be prohibited were it to be newly erected in a residential area.

Plaintiffs are sincere, essentially honest and responsible people who are disturbed by the noise and vibration produced by the forge operation. They live in houses scattered over an area wherein there are at least 100 homesites occupied by persons who are making no complaint. Noise and vibration emanate from the forge operation, and both are definitely observable in the homes occupied by the plaintiffs. Many of the plaintiffs believe that the vibrations have caused damage to their houses. They failed, however, to adduce any scientific evidence to support their belief. Many said the noise interferes with their sleep, but they failed to show that they were of average sensibility.

Many Ohio decisions recite that each case of nuisance must stand by itself and be determined with reference to the circumstances peculiar to it. Still they seem clearly to establish that manufacturing activity, conducted in a factory district, does not amount to a nuisance unless a negligent, careless, or improper use of industrial equipment produces noise, vibration, or other disturbing effect over and above that reasonably caused by the careful and proper use of such equipment or machinery, so as to seriously disturb and discomfit persons of ordinary sensibility. See *Goodall* v. *Crofton* (1877), 33 Ohio St. 271; *Grothlich* v. *Klein & Cohn* (1909), 13 C. C. (N. S.) 335, 22 C. D. 665; *Gau* v. *Ley* (1916), 27 O. C. A. 1, 28 C. D. 235; *Bell* v. *Pollak Steel Co.* (1916), 19 N. P. (N. S.) 529-531; 28 O. D. 28-50.

Here the evidence does show that for several months, in 1973, the Hasenclever 3000 ton hydraulic forging press not infrequently did produce a peculiarly excruciating whine or squeal which was probably enjoinable under the rule just recited. It was also most distressing to defendants who made great effort to discover the cause, which they found attributable to a type of oil not suited to this particular machine. Thereupon this problem was promptly corrected. This discomfort, corrected as soon as its cause was discovered, in all likelihood caused at most only nominal damages. The reason is that the evidence clearly shows that a continuing, outstanding program of noise abatement and

vibration control is constantly maintained by defendants. in respect to instant forging operation.

We will next examine defendants' contention, which is that their activity does not constitute a private nuisance, and even if it does, they have a right to operate a forge shop on these premises for the reason that they have done so openly, notoriously, and under a claim of right for more than 21 years; so that they have acquired as an incorporeal hereditament, the right to use their real estate so involved at this location as a forge shop when such operation is carefully and prudently conducted.

The court's examination of this claim finds that not all the states have squarely decided this issue and of those which have, some have declared for prescriptive right, others for no prescriptive right, and others resort to a balancing of equities. See general discussion found in the article, Spater, *Noise and the Law* (1965), 63 Mich. L. Rev. 1373, and, in the comment, Levitin, *Change of Neighborhood in Nuisance Cases* (1964), 13 Clev.-Mar. L. Rev. 340. Nor has the court overlooked the Arizona case of *Spur Industries* v. *Del E. Webb Development Co.* (1972), 108 Ariz. 178, 494 P. 2d 700. Here the trial judge, in a jurisdiction which has not recognized prescriptive right in nuisance situations, enjoined a beef production operation where from 20,000 to 30,000 cattle were being constantly fed so that daily over 1,000,000 pounds of wet manure was produced. On appeal, the state's Supreme Court, at page 182 said "* * * despite the admittedly good feedlot management and good housekeeping practices by Spur, the resulting odor and flies produced an annoying if not unhealthy situation as far as the senior citizens of southern Sun City were concerned." As Spur's operation was lawful in its inception and during its continuing operation thereafter during which later period Sun City was located and built nearby as a commercial real estate venture, the Supreme Court, at page 186, although affirming the injunction, remanded the cause as a matter of equity, to require Webb to indemnify Spur for damages sustained as a "* * * reasonable and direct result of the granting of the permanent injunction." This court also takes judicial notice of the fact that there is still much more "wide open space" in Arizona than in Ohio.

The court has not found any recent and clear-cut Ohio decisions in this area of the law, but does find that the Supreme Court of Georgia decided that: "The right to maintain a private nuisance may be acquired by prescription." *Anneberg* v. *Kurtz* (1944), 197 Ga. 188, 193, 28 S. E. 2d 769. This decision found that a canning factory had by prescription acquired the right to discharge into a stream refuse from its seasonal operation, despite fact that had the complaint been made before the operable statute of limitations (there 20 years) had run the discharge could have been enjoined as a nuisance.

The court finds Ohio law to be of the same effect, although it has found no cases in the 50 years last past squarely in point. It was, however, held in *Tepe* v. *Norwood* (1903), 48 W. L. B. 876, affirmed without opinion, 71 Ohio St. 519, 74 N. E. 1134 (1904), that if it were found that the village had emptied its sewage into a stream for over 21 years, it had acquired a right to continue to do so. Of course, it is recognized that much recent sanitary legislation may make this precedent of small effect. On the other hand, this ruling may in fact have caused numerous complaints to have been filed within the 21 year period. Although not squarely in issue the proposition that a right to commit a private nuisance may be acquired by prescription was recognized as the law of Ohio in these cases: *Valley Railway Co.* v. *Franz* (1885), 43 Ohio St. 623, 4 N. E. 88; *Mansfield* v. *Hunt* (1900), 19 C. C. 488, 10 C. D. 567; *Cleveland* v. *Standard Bag & Paper Co.* (1905), 72 Ohio St. 324, 74 N. E. 206; *Norwalk* v. *Blatz* (1906), 9 C. C. (N. S.) 417, 19 C. D. 306; and *Louisville Brick & Tile Co.* v. *Calmelat* (1917), 6 Ohio App. 435, 30 C. D. 159.

The evidence is clear that defendants' forging operation began in 1928 when there were no zoning laws in effect in its area of operation, the zoning law enacted in 1929 and in amendments thereto have ever since included this area of defendants in a general industry zone, defendants' business in itself is a lawful one necessary to modern industry, the technical evidence is to the effect that such vibration as emanates from the perimeter of defendants' land is insufficient to crack plaster, and the noise produced gen-

erally is that produced by any carefully and prudently operated forge shop save the one incident in 1973 in connection with use of the Hasenclever press. During all of these now more than 45 years, defendants have continuously carried out their operation unencumbered by any forbidding statute or ordinance, and have done so openly, notoriously and under claim of right without any adverse adjudication to the contrary. In settling the war-time lawsuits Forge in no way admitted the rightness of those plaintiffs' claims although this court must suspect that the war-time fact of 24-hour per day operation and armed forces procurement policies of a financial nature were not unimportant in influencing mentioned settlements.

It is, therefore, the finding of the court that at a day not later than December 31, 1949, the defendants acquired the right to operate a forge shop in their present location and that such right constitutes an incorporeal hereditament of such lands of a nature such that they may not now be deprived of it save by appropriation and the paying of just compensation therefor. Such unpleasantness as this may entail to some residents or landowners in the vicinity constitutes a non-compensable burden upon such lands in the nature of a perpetual easement. Should defendants' land ever cease to be used as a forge shop by them or any successor this incorporeal hereditament would doubtless expire.

Considering all the circumstances, the court deems apt the words of Lord Justice James, said a century ago, in *Salvin* v. *North Brancepeth Coal Co.* (1874), L. R., 9 Chancery App. Cases, 705, 709: "* * * If some picturesque haven opens its arms to invite the commerce of the world, it is not for this court to forbid the embrace, although the fruit of it should be the sights, the sounds, and smells of a common seaport and shipbuilding town, which would drive the Dryads and their masters from their ancient solitudes." This opinion was referred to with approval by the Supreme Court of Ohio in *Mansfield* v. *Bristor* (1907), 76 Ohio St. 270, 275; 81 N. E. 631.

By reason of the foregoing the complaint must be dismissed.

*Complaint Dismissed.*