Argued December 4, 1975, reversed and remanded April 2, petition for
rehearing denied May 11, 1976

# SMEJKAL, *Appellant,*
## *v.*
# EMPIRE LITE-ROCK, INC. et al, *Respondents.*

547 P2d 1363

*Gary D. Rossi,* Coos Bay, argued the cause and filed briefs for appellant.

*William L. Hallmark,* Portland, argued the cause for respondents. With him on the brief were Jones, Lang, Klein, Wolf & Smith and Frederic A. Yerke, Miller, Anderson, Nash, Yerke & Wiener.

Before McAllister, Presiding Justice, and Holman, Tongue, Howell, and Bryson, Justices.

McALLISTER, J.

## McALLISTER, J.

Plaintiff, James A. Smejkal, brought this action for alleged injury to his real property and growing timber thereon caused by air contaminants and emissions emanating from defendants' nearby rock processing plant. Smejkal alleged that the emissions from defendants' plant exceeded permissible safe levels of pollution established by the Columbia-Willamette Air Pollution Authority. Smejkal had owned his land since July 1, 1964.

Defendant Empire Lite-Rock, Inc., an Oregon corporation, had owned and operated the plant from 1947 until September 30, 1971, when it voluntarily dissolved and conveyed all of its assets to Allied Equities Corporation, a Nevada corporation, which has continued to operate the plant under the assumed business name of Empire Building Material Company.

The defendants' answer alleged two separate affirmative defenses. The first alleged that the statute of limitations barred liability for any acts done more than six years prior to the filing of the complaint. The second affirmative defense alleged that defendants had acquired a prescriptive easement by continuous uninterrupted adverse, open and notorious use of plaintiff's lands for more than ten years prior to the filing of the action.

Smejkal's reply admitted the first affirmative defense, but denied the second. Defendants then moved for a judgment on the pleadings, which motion was granted and judgment was entered for defendants. Plaintiff appeals.

The only issue is whether a prescriptive right to pollute land can be acquired against a private landowner for activities complained of which also constitute a public nuisance.

Defendants contend that their activities have been continuous since 1947 and that their prescriptive rights became vested in 1957.

Although plaintiff has entitled his action as one at law for trespass, his complaint alleges only that defendants have caused certain slate dust of a noxious nature to emanate from their plant, which dust has become airborne and that portions thereof have been deposited upon plaintiff's land and damaged and destroyed plant life and timber thereon.

It is not necessary that we decide whether this is an action for trespass or for nuisance or for both. As we said in *Martin et ux v. Reynolds Metals Co.,* 221 Or 86, 90, 342 P2d 790 (1959):

> "Trespass and private nuisance are separate fields of tort liability relating to actionable interference with the possession of land. They may be distinguished by comparing the interest invaded; an actionable invasion of a possessor's interest in the exclusive possession of land is a trespass; an actionable invasion of a possessor's interest in the use and enjoyment of his land is a nuisance, 4 Restatement, Torts 224, Intro. Note Chapter 40.

> "The same conduct on the part of a defendant may and often does result in the actionable invasion of both of these interests, in which case the choice between the two remedies is, in most cases, a matter of little consequence. * * *"

The term "nuisance" itself is used to describe the invasion of two disparate rights. Where the invasion is of a right common to members of the public generally it is called a "public nuisance." *Raymond v. Southern Pacific Co.,* 259 Or 629, 634, 488 P2d 460 (1971). The same conduct may result in both a private and a public nuisance. In order to maintain an action on account of a public nuisance a private party must show that he has sustained an injury of a special character distinct and different from that suffered by the public generally. *Raymond v. Southern Pacific Co., supra,* 259 Or at 634. *Wilson v. City of Portland,* 153 Or 679, 687, 58 P2d 257 (1936). Substantial harm is necessary to liability for private nuisance. *Phillips Ranch, Inc., v. Banta,* 273 Or 784, 543 P2d 1035, 1038 (1975).

Defendants admit in their brief that their operation

of the plant might constitute a public nuisance, depending on the quantity of particulates emanated, the pattern of distribution and the nature of the surrounding area. These would be questions for the finder of fact. Plaintiff's complaint alleges sufficient facts to establish that he has suffered substantial injury of a special nature as distinguished from the public generally. Plaintiff, therefore, has sufficiently stated a cause of action.

Defendants contend that they have acquired an easement by prescription to maintain a private nuisance against the plaintiff so as to bar his action for damages. On the other hand, plaintiff contends that because the defendants' activities also constitute a public nuisance, an easement cannot be acquired so as to defeat his private cause of action.

As a general rule, one cannot acquire a prescriptive right to maintain a public nuisance no matter how long it has continued. But an easement by prescription can be acquired for a private nuisance. *Arrien v. Levanger,* 263 Or 363, 372, 502 P2d 573 (1972); *Sweet et al v. Irrigation Canal Co.,* 198 Or 166, 196, 254 P2d 700, 256 P2d 252 (1953).

By the great weight of authority where the activity complained of constitutes both a public and private nuisance, prescriptive rights will not run against the private individual even where he is suing for damages personal to himself. The rule is stated in Restatement of Torts 2d, § 821C and Comment e as follows:

"§ 821C. *WHO CAN RECOVER FOR PUBLIC NUISANCE*

"FOR A PUBLIC NUISANCE THERE IS LIABILITY IN TORT ONLY TO THOSE WHO HAVE SUFFERED HARM OF A KIND DIFFERENT FROM THAT SUFFERED BY OTHER MEMBERS OF THE PUBLIC EXERCISING THE PUBLIC RIGHT.

\* \* \* \* \*

"*e. Private nuisance.* Where the nuisance, in addition to interfering with the public right, also interferes with

[ 575 ]

the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one. In such a case the harm suffered by the plaintiff is of a different kind, and he can maintain an action not only on the basis of the private nuisance itself, but also, if he chooses to do so, on the basis of the particular harm from the public nuisance. One important advantage of the action grounded on the public nuisance is that prescriptive rights, the statute of limitations, and laches do not run against the public right, *even when the action is brought by a private person for particular harm.*" (Emphasis added.)

See, also, cases cited at page 39 in support of Comment e.

The effect of these general rules was explained in *Laurance et al v. Tucker,* 160 Or 474, 479-480, 85 P2d 374, 376 (1938):

"* * * We think, however, that the other allegations contained in the answer that the defendant has been in the open, notorious, hostile, and exclusive possession of the space occupied by the drain would, if established to have been done under a claim of ownership and continuously for a period of 10 years, be sufficient to create title by prescription. However, that would not be the case if the acts complained of constituted a public nuisance or affected the public, or any considerable part of it, injuriously, since the statute of limitations does not run against a public nuisance no matter how long continued. If, however, the nuisance was a private nuisance and *affected only the owner of the premises trespassed upon,* it would seem that the open, notorious and exclusive possession of the land covered by the ditch continuously for a period of 10 years under a claim of ownership would be sufficient to constitute adverse user as to the ground so occupied. * * *" (Emphasis added.)

*Sweet et al v. Irrigation Canal Co.,* supra, involved a fact situation similar to the case at bar. In that case plaintiffs sought an injunction and damages against the defendant for maintenance of an open ditch on abutting land. The defendant argued, *inter alia,* that it had acquired a prescriptive right to maintain the ditch. This court held that, where plaintiffs were complaining in their private capacity as landowners whose

rights of ingress and egress were interfered with and the ditch was also a public nuisance, the plaintiffs had not lost their rights through the passage of time. 198 Or at 196.

There are numerous cases from other jurisdictions which hold similarly. *Elves v. King County,* 49 Wash2d 201, 299 P2d 206 (1956), involved a private landowner who brought suit to enjoin a municipality from casting water through a culvert onto plaintiff's property. The trial court issued the injunction, finding the municipality's activities both a public and private nuisance. The municipality claimed an easement, but the Supreme Court of Washington summarily dismissed this contention "because the right to maintain a public nuisance cannot be acquired by prescription." 299 P2d at 206.

In *Gundy v. Village of Merrill,* 250 Mich 416, 230 NW 163 (1930), the plaintiffs claimed that defendant creamery and defendant city were discharging wastes into an open drain which ran across their farm and stagnated in front of their home. The plaintiffs sought an injunction and damages. The defendants asserted, *inter alia,* that they had acquired a prescriptive right to continue their use of the drain. The court found the use constituted a public nuisance and, as such, no prescriptive right to maintain it could be acquired. 230 NW at 163. A judgment for the plaintiffs was affirmed.

See, also, *Clearview Land Develop. Co., Inc. v. Commonwealth,* 15 Pa Cmwlth 303, 327 A2d 202 (1974); *Pennsylvania R. Co. v. Sagamore Coal Co.,* 281 Pa 233, 126 A 386, 391-92, 39 ALR 882 (1924); *Wade v. Campbell,* 200 Cal App 2d 54, 19 Cal Rptr 173 (1962); *Strong v. Sullivan,* 180 Cal 331, 181 P 59, 4 ALR 343 (1919); *City of Meridian v. Tingle,* 226 Miss 317, 84 S2d 388 (1956); *Ryan et al v. Louisiana Soc. for Prevention of Cruelty,* 62 S2d 296 (La App 1953); *Gardenhire v. Sinclair-Prairie Oil Co.,* 141 Kan 865, 44 P2d 280 (1935); *Lightner v. City of Raleigh,* 206 NC 496, 174 SE 272, 275 (1934).

Defendants rely on *Arrien v. Levanger, supra,* but we think that reliance is misplaced. *Arrien* was not concerned with the problem at hand because the plaintiff in that case was complaining of a purely private nuisance. There was no evidence that any other persons were injured by defendant's flooding of plaintiff's land. The defendant, therefore, acquired a prescriptive right to flood the lands of plaintiff.

The court in *Arrien* did cite in a footnote, 263 Or at 372, a Wisconsin case which supported defendants' contention that an easement can always be acquired against a private individual. *Charnley v. Shawano Water-Power & River-Imp. Co.,* 109 Wis 563, 85 NW 507 (1901) represents a minority position and has been overruled, at least *sub silentio,* by the later Wisconsin case of *Dolata v. Berthelet Fuel & Supply Co.,* 254 Wis 194, 36 NW2d 97, 100, 8 ALR2d 413 (1949), from which we quote:

> "* * * As is stated in Meiners v. Frederick Miller Brewing Co., 78 Wis. 364, 366, 47 N.W. 430, 10 L. R. A. 586:
>
> " 'The defense of prescription does not lie, either to a public prosecution or a private action, to abate a common nuisance. * * * This being an action to abate a common nuisance, and nothing more, the defense of prescription is not available. It is said in Wood, Nuis., § 727, that "there can be no prescription for a public nuisance of any kind or description, and as to whether or not a person exercising a trade or occupation which is a public nuisance can acquire a prescriptive right to carry on the same, as against private or individual rights, is a question which, in this country, has never been definitely settled, but I think there can be no question but that, as a result of all the cases, such a right is not generally recognized." *We think the rule here suggested is the better one, and do not hesitate to adopt it.* ' " (Emphasis added.)

The court made no reference in *Dolata* to its earlier holding in *Charnley. Cf. Kellogg v. Village of Viola,* 67 Wis2d 345, 227 NW2d 55, 59 (1975).

We have reviewed other cases which support defen-

dants' position. They are unpersuasive. *City of Cleveland v. Standard Bag & Paper Co.,* 72 Ohio St 324, 74 NE 206 (1905), *but see Peyton v. Hammer,* 27 Ohio Misc Rep 68, 56 Ohio Op 2d 265, 269 NE2d 136, 138 (1970), and *Weade v. City of Washington,* 71 Ohio Law Abs 294, 58 Ohio Op 230, 129 NE2d 110, 113-114 (1955); *Anneberg v. Kurtz,* 197 Ga 188, 28 SE2d 769, 772-773, 152 ALR 338 (1944), *but cf. Roughton v. Thiele Kaolin Co.,* 209 Ga 577, 74 SE2d 844, 847 (1953); *Alabama Consol. Coal & Iron Co. v. Turner,* 145 Ala 639, 39 So 603, 606 (1905).

Defendants, as previously noted, concede that their activities might constitute a public nuisance. They also argue, however, that their activities could not have constituted a public nuisance until January 1, 1970 when the Columbia-Willamette Air Pollution Authority was established. This contention is without merit. Nuisance is a common law action, as is trespass. The emanation of dust has long been seen as an actionable invasion of a person's property rights. *See Martin et ux v. Reynolds Metals Co., supra,* 221 Or at 90-93. Statutorily, air pollution was first declared a public nuisance in Oregon in 1951, six years before any prescriptive rights of defendants would have vested.

Oregon Laws 1951, Chapter 425, §1, stated:

"This Act shall be deemed an exercise of the police power of the State of Oregon for the purpose of protecting the safety, welfare, peace and morals of the people of this state; to prevent the pollution of the air with impurities menacing the health and general welfare of the people of the State of Oregon; and to the end that the least possible injury shall be done to human, plant and animal life and property, general legislation operating uniformly throughout the state is necessary and the provisions of this Act shall be liberally construed for accomplishment of these purposes."

Oregon Laws 1951, Chapter 425, §7, stated:

"The discharge into the air of solids, liquids or gases so as to cause such injury to human, plant or animal life, or to property, as constitutes a public nuisance, is contrary to the public policy of the State of Oregon."

[ 579 ]

In 1959, the Oregon legislature transferred the duties and powers of the Air Pollution Authority to the Sanitary Authority. Oregon Laws 1959, Chapter 357. The Sanitary Authority had first been established by initiative petition in 1939 to control water pollution. Oregon Laws 1939, Chapter 3. *See, also,* Oregon Laws 1961, Chapter 426, §§ 1, 2, 13; Oregon Laws 1963, Chapter 171, § 4; Oregon Laws 1969, Chapters 216, 593 §28, 608 §4.

It should be noted that ORS 468.100(4) specifically provides that the enforcement powers of the Environmental Quality Commission (the successor to the Sanitary Authority, Oregon Laws 1969, Chapter 593) do not preclude the bringing of actions or suits by a person on account of a public or private nuisance.

The public policy of the State of Oregon remains clearly defined since 1951. It is "[t]o *restore* and maintain the quality of the air resources of the state in a condition as free from air pollution as is practicable, consistent with the overall public welfare of the state." ORS 468.280(1)(a). (Emphasis added.)

The plaintiff's complaint alleges that portions of the slate dust have been deposited upon plaintiff's land and, presumably, other portions of the dust have been deposited upon the lands of others. There is no serious contention by defendants that their operations have not constituted a public nuisance.

The general rule and the strong public policy of this state requires a finding that no prescriptive right to pollute against a private landowner can be acquired if such pollution is also a public nuisance. The private landowner can recover in damages if he is complaining of a special injury from the public nuisance.

Accordingly, the judgment of the trial court is reversed and the case is remanded for a trial on the merits.