**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 4, 2023**

# In the Court of Appeals of Georgia

A23A1068. TALBOY v. DUKES.

BROWN, Judge.

Amy Talboy appeals from the trial court's grant of summary judgment to her neighbor, Martha Dukes, in the declaratory judgment action Talboy filed to establish an easement for a sewer line on the property of Dukes. She contends that the trial court erred by failing to conclude that genuine issues of fact exist as to the public element of a prescriptive easement in relation to a sewer line that ran from Talboy's property through Dukes' property to connect to a sewer main line. For the reasons explained below, we affirm.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.)

*Merlino v. City of Atlanta*, 283 Ga. 186, 186-187 (657 SE2d 859) (2008). So viewed, the record shows that in August 2004, Dukes moved into a home solely owned by her husband on Merrick Drive. Over seven years later, in February 2012, her husband conveyed the property to himself and Dukes as joint tenants. He died in 2019. Dukes' home uses a gravity-fed sewer line.

In April 1997, Talboy bought property on West Roxboro Road that shares a contiguous rear property line with Dukes' property and is uphill from the Dukes' property. Talboy's home was built in 1959, and the gravity-fed sewer line exited the rear of the home and went downhill through Dukes' property to connect in some fashion with the sewer main line on Merrick Drive. It did not connect with the main sewer line on West Roxboro Road because it exited the rear of the home below the grade of both West Roxboro Road and the existing sewer main on West Roxboro Road. Gravity-fed sewer lines can only flow downhill. There is no evidence of a recorded easement for the original sewer line. The survey obtained by Dukes' husband in 1994 does not depict a sewer line coming from the Talboy property through the Dukes' property.

Sometime between 2000 and 2010, Talboy noticed a white plastic sewer cleanout in Dukes' yard. Not long after she noticed the new cleanout, she noticed a

periodic wet spot or small puddle in front of a treeline in her back yard a few feet from the rear boundary line.

Dukes testified that the sewer line from her home to Merrick Drive was replaced in late 2003 or early 2004, during a time when she was separated from her husband and not living in the home. She did not know if the new sewer line followed the same line as the former sewer line and did not see any trenching when the new line was installed.

In December 2018, Talboy noticed solid white material in the same location as the wet spot she had previously observed; this material was confined to her yard. She contacted the City of Atlanta and learned that its estimated response time was 45 days. A plumber she hired advised her that there was a blockage in the sewer line and recommended that she contact the City to determine where the blockage was located. The City responded faster than anticipated and may have been onsite the same day as the plumber. In her deposition, Talboy testified that she was "not sure who came out first. . . . [T]he [cleanout] that was spewing sewage was underground. Somebody excavated that and told me it was an old [cleanout], and I think I recall the [C]ity excavating that."[1] After being on site for about an hour "around the sewage hole," the

---

[1] In her affidavit submitted in opposition to Dukes' motion for summary judgment, Talboy averred, "[t]he people for the City inspected the wet area and told me that there was an old [cleanout] in the wet area. . . ."

City advised her that the problem was not something for which the City was responsible and that her sewage line crossed into Dukes' property.

Talboy admitted that just looking at Dukes' property would not have revealed that Talboy's underground sewer line went through Dukes' property. Dukes testified that she did not know the location of the original sewer pipes on either her property or that of Talboy, including the location of the line from the Talboy property to Merrick Drive.

In an affidavit, Talboy asserted that she first saw the "old metal cleanout in December 2018," and claimed that "[a]lthough [the] old cleanout could be seen, [she] had not done yard work in [her] back and had not noticed it." In her unsworn amended complaint, however, Talboy alleged that the City's crew "located an old metal cleanout *buried* in the wet area which was the source of the water." (Emphasis supplied.)

After learning that the City was not responsible for any repair, Talboy contacted Noel Bonnick with PlumberATL. On January 9, 2019, Bonnick installed a new sewer line that connected with Dukes' sewer line rather than directly to the main sewer line on Merrick Drive.[2] Dukes and Talboy later learned that such a "grapevine" connection

---

[2] Dukes testified that on that date, Bonnick "showed [her] the broken off pipe in . . . Talboy's yard . . . that was on the other side of the fence . . . and said that he thought it came through our yard. And it was a broken off, like clay-ish looking pipe.

is no longer allowed by the City Code. A dispute between the parties then ensued as to whether Bonnick had permission to connect Talboy's sewer line to Dukes' line and the remediation of damage to the landscape and hardscape in Dukes' yard as a result of Bonnick's work.

Talboy subsequently filed a petition for declaratory judgment and injunctive relief and sought damages for the alleged intentional disconnection of her sewer line when the sewer line on Dukes' property was replaced. She sought a declaration that she had an easement over Duke's property for her sewer line and an injunction preventing Dukes from disconnecting the new grapevine sewer line until the rights of the parties could be established. Dukes filed a counterclaim seeking damages for trespass, intentional infliction of emotional distress,[3] and a writ of ejectment requiring the removal of the new sewer line and barring Talboy from further entry onto Dukes' property. In an amended petition, Talboy abandoned her claim for damages based upon the intentional disconnection of her sewer line and asserted a claim for attorney fees and costs under OCGA § 13-6-11. She asserted in her amended petition that she had

It was very old and it was jagged." When asked for clarification of what she saw, Dukes described it as a "a cleanout, I believe."

[3] Dukes asserted that Talboy's plumber disturbed the gravesite for her pet cats against her express instruction.

an easement across Dukes' property because the original sewer line that serviced her property and ran through Dukes' property was allowed by Dukes' predecessor in title and was used in an open and obvious manner since its installation in 1959.

Following discovery, Dukes moved for summary judgment in her favor on Talboy's claims in her amended petition for declaratory judgment and injunctive relief. She contended that Talboy could not present evidence of a prescriptive easement because the sewer line was not public, visible, or adverse. To dispatch with Talboy's assertion that a predecessor in title had granted a sewer easement, Dukes pointed to the lack of an express, written easement and the absence of evidence required for a license to ripen into an easement.

In opposition to the summary judgment motion, Talboy asserted questions of fact existed as to whether she has an easement by prescription for the original sewer line based upon Dukes' alleged constructive notice and whether a license ripened into an easement for the new grapevine sewer line. In support of these assertions, she submitted her own affidavit, as well as one from a licensed engineer. The licensed engineer described his investigation into the location of Talboy's original sewer line and stated that as part of this investigation, he discovered two manhole covers in the middle of Merrick Drive near Dukes' property.

Dukes moved to strike portions of Talboy's affidavit on the grounds of hearsay, lack of personal knowledge, and for being contrary to her sworn deposition testimony. She also moved to strike the expert's affidavit from the trial court's consideration of her motion for summary judgment because Talboy disclosed the expert two months after the deadline imposed in a scheduling order. In a hearing on the motion for summary judgment, Dukes' counsel asserted that the trial court need not rule on the motion to exclude the expert if it granted Dukes' motion for summary judgment, and the hearing concluded with the trial court stating "it sounds like I can at least take up the motion for summary judgment [a]nd that . . . may or may not take care of some of the other issues, so I'll start working on the motion for summary judgment." The trial court's intent with regard to the motion to strike Talboy's affidavit is unclear.

In its order granting Dukes' motion for summary judgment on Talboy's "First Amended Petition for Declaratory Judgment and Injunctive Relief," the trial court did not rule on Dukes' motion to strike the affidavits of Talboy and her expert.[4] It did, however, state that "the evidence in the record indicates that, until Plaintiff's 2018 sewer problems, the sewer line at issue was buried underground and unknown to

---

[4] Dukes has not filed a cross-appeal asserting that error resulted from the trial court's failure to rule on her motion to strike.

7

[Talboy] and the public."[5] Based on this conclusion, it found that Talboy could not satisfy the "public" element of a prescriptive easement. With regard to an easement arising from the license to install the new grapevine sewer line, the trial court concluded that it was void as a matter of law because it violated "City of Atlanta Code Section 154-155, which prohibits private decentralized wastewater systems." In the alternative, the trial court ruled that this purported easement also failed because Talboy did not expend any money to improve Dukes' property.

On appeal, Talboy disputes only the trial court's ruling with regard to the prescriptive easement for the original sewer line.[6] As she does not dispute the trial court's ruling with regard to the license for the new sewer line ripening into an easement, we will not consider this ground for an easement. *Russell v. Barnett Banks*,

---

[5] The trial court's order makes no reference to whether the old metal cleanout on Talboy's property was visible.

[6] Talboy contends in a footnote to her brief that because the trial court did not rule on her alternative claim that a license for the original sewer connection to the main ripened into an easement, it remains pending below. We disagree as the trial court's order clearly granted summary judgment in favor of Dukes on the entirety of Talboy's claims for declaratory judgment and injunctive relief in her amended petition, and expressly stated that only Dukes' counterclaims remained pending. Furthermore, both parties briefed the issue of whether a license for the original sewer line ripened into an easement. As Talboy does not enumerate this theory as a ground of error in the trial court's grant of summary judgment to Dukes, it is not before us. *Russell v. Barnett Banks*, 241 Ga. App. 672, 673 (527 SE2d 25) (1999).

8

241 Ga. App. 672, 673 (527 SE2d 25) (1999). Talboy asserts that genuine issues of material fact exist as to whether she has an easement by prescription for the original sewer line. We disagree.

"Prescriptive title to an easement is governed by the same rules as prescriptive title to land." *Ga. Power Co. v. Gibson*, 226 Ga. 165 (2) (173 SE2d 217) (1970).

> The burden of establishing prescriptive title lies on the party claiming it. To establish adverse possession, a party must show possession that is in the right of the party asserting possession and not another and that is public, continuous, exclusive, uninterrupted and peaceable, and accompanied by a claim of right. OCGA § 44-5-161. Possession of property in conformance with these elements for a period of 20 years confers good title by prescription to the property. OCGA § 44-5-163.

(Citations and punctuation omitted.) *Kelley v. Randolph*, 295 Ga. 721, 722 (1) (763 SE2d 858) (2014). "Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party." OCGA § 44-5-161 (b). Finally, "[p]rescriptive rights are to be strictly construed, and the prescriber must give some notice, actual or constructive, to the landowner he or she intends to prescribe against." (Citation and punctuation omitted.) *Bailey v. Moten*, 289 Ga. 897, 899 (2) (717 SE2d 205) (2011).

9

In this case, the trial court correctly concluded that Talboy could not establish that her possession of the sewer line on Dukes' land was public under OCGA § 44-5-161. Black's Law Dictionary defines the adjective "Public" to include "notorious" and defines "Notorious possession" as "such possession that is so conspicuous that it is generally known and talked of by the public or the people in the neighborhood. Possession or character of holding in its nature having such elements of notoriety that the owner may be presumed to have notice of it and of its extent." Black's Law Dictionary (6th ed. 1990).

Talboy points to the following facts to establish that her possession of the original sewer line was public: Dukes lived in the home for a number of years before she acquired title; Dukes' mid-century home had no sewage pump and used a gravity-fed sewer system; two sewer manhole covers visible on Merrick Drive in front of Dukes' home placed Dukes on notice of a sewer main under Merrick Drive; the elevation change between West Roxboro Road and Merrick Drive placed Dukes on notice that the uphill Talboy property would have to connect its sewer line to Merrick Drive; and the old metal cleanout on the Talboy property a few feet from the rear boundary line for the contiguous properties placed Dukes on notice that Talboy's sewer line must run downhill over Dukes' property to Merrick Drive. None of these

facts are sufficient, however, to show that Talboy's possession of an underground sewer line on Dukes' property was "so conspicuous that it is generally known and talked of by the public or the people in the neighborhood" or had "such elements of notoriety that [Dukes] may be presumed to have notice of it and of its extent." Compare *Simpson v. Colonial Pipeline Co.*, 269 Ga. 520, 521 (2) (499 SE2d 634) (1998) (finding corporation obtained prescriptive easement for underground pipeline where corporation had "at all relevant times inspected, cleared, and marked its right of way" and at one point after the owner of the servient state took title, the corporation used heavy equipment to install a 40-inch diameter pipe in the area for which it sought an easement).

In support of her claim that the trial court erred by concluding that she could not satisfy the "public" element of a prescriptive easement claim, Talboy relies upon case law addressing when a bona fide purchaser takes title subject to an existing easement, just as she did in her brief to the trial court. This case law provides that "a bona fide purchaser without knowledge or constructive notice of the existence of an easement takes title free from the easement, and he may assume that there is no easement except as shown of record or by open and visible indications on the land itself." (Citations and punctuation omitted.) *Merlino*, 283 Ga. at 188 (1). A purchaser "will be charged with

11

notice of the easement where an inspection of the premises would have readily revealed such physical facts as would, in the exercise of ordinary diligence, put him upon inquiry." *Burk v. Tyrrell*, 212 Ga. 239, 243 (3) (91 SE2d 744) (1956). This case law, however, should not be applied to the analysis of whether an easement by prescription exists in the first instance. Cf. *Hopkins v. Va. Highland Assocs.*, 247 Ga. App. 243, 245 (1) (541 SE2d 386) (2000) (holding that parol license became easement running with the land before making separate determination of whether a subsequent purchaser took title subject to this easement). Instead, it applies to whether a bona fide purchaser takes title subject to an already existing easement.

As Talboy disputes no other aspect of the trial court's grant of summary judgment to Dukes on Talboy's claim for declaratory judgment and injunctive relief, we affirm.

*Judgment affirmed. Markle, J., concurs. McFadden, P. J., concurs fully and specially.*

A23A1068. TALBOY v. DUKES.

MCFADDEN, Presiding Judge, concurring fully and specially.

I agree with the majority that Talboy has not presented sufficient evidence to create a question of fact on the issue of whether her use of the alleged easement across Dukes's property was public. So I concur fully and specially.

Among the statutory requirements for prescriptive title is that the claimant's possession be "public." OCGA § 44-5-161 (a) (3). As far as I can tell, the meaning of the word "public" as used in that statute has never been addressed in a published opinion in Georgia, even though the word has been in the prescriptive title statute since the 19th Century. See Ga. Code 1873, § 2679. Because the claimed easement is for an underground improvement, this case presents the question of that word's statutory meaning. And my agreement with the majority is founded in part on my understanding of "public" as it is used in the statute.

OCGA § 44-5-161, provides: "In order for possession to be the foundation of prescriptive title, it . . . [m]ust be *public*, continuous, exclusive, uninterrupted, and peaceable. . . ." OCGA § 44-5-161 (a) (3) (emphasis supplied).

"In considering a statute's meaning, courts must afford the words of the statute their ordinary signification, see OCGA § 1-3-1 (a), and we must presume that the General Assembly meant what it said and said what it meant." *Southern States Chemical v. Tampa Tank & Welding*, 316 Ga. 701, 713 (2) (888 SE2d 553) (2023) (citation and punctuation omitted). See also OCGA § 1-3-1 (b) ("[T]he ordinary signification shall be applied to all words. . . .").

"Public" in the sense it is used in OCGA § 44-5-161 has been defined in a modern dictionary as "exposed to general view: open; well-known, prominent; perceptible, material." https://www.merriam-webster.com/dictionary/public. And that definition of "public" appears to have been conventional in the years leading up to our earliest codification of the statute before us. See *United States v. Vallejo*, 66 U. S. 541, 556-557 (17 LEd 232) (1861) ("But where a grant is *public* and notorious, without suspicion of fraud or forgery—where a large consideration was paid to the Mexican Government—where possession has been taken and held for sixteen years—where numerous purchasers have made improvements worth millions, it is the

2

duty of the court to deal with it according to the rules of equity and justice, instead of applying sharp rules of decision to inflict a forfeiture.") (emphasis added); Ga. Code 1873, § 2679.

Our Supreme Court's interpretation of the statute before us aligns with that definition of "public." It has held that to obtain a prescriptive easement, the claimaint's use "must be . . . open, visible, notorious, and continuous." *Anneberg v. Kurtz*, 197 Ga. 188, 190 (28 SE2d 769) (1944). And Black's Law Dictionary considers "open possession" to be a synonym of "notorious possession," which it defines as "[p]ossession or control that is evident to others; possession of property that, because it is generally known by people in the area where the property is located, gives rise to a presumption that the actual owner has notice of it." Black's Law Dictionary (11th ed. 2019).

So I agree with the majority. Under that definition of "public," the facts that Talboy points to do not show that her possession of the alleged easement satisfies OCGA § 44-5-161. See *Nahant Rd., LLC v. Mastoras*, 2014 WL 2548094, at *4 (Mass. Land Ct. June 3, 2014) (claimant's use of sewer pipe was not open and notorious as pipe was underground and not observable by or apparent to the property owners as there were no related installations or connection points located above

3

ground on the property owners' property; a manhole cover on a nearby street and an access point on the claimant's property were the only visible indicators, and neither was located on the property owners' property); *Exley v. Gallivan*, 96 Conn. 676, 677, 115 A. 482, 482 (1921) (the lay of the land and property owner's own use of sewer pipe near his house did not amount to open use so as to support a prescriptive easement on the property). Cf. *Rotman v. White*, 908 NE2d 846, 849 (2009) (property owner had actual notice of defendants' continued use of sewer line under his property—as he had complained to them about it at least 20 times—so "the open, notorious, and continuous use prongs [to establish a prescriptive easement were] satisfied").

The cases that Talboy cites in support of her contention that her possession was "public" are inapposite. Those cases concern whether a bona fide purchaser of property containing an unrecorded easement takes property free from that easement. They hold that circumstances can put the purchaser on notice of the easement, in which case the purchaser may take the property subject to the easement.

Here, the issue is not whether Dukes took title to her property subject to Talboy's alleged unrecorded easement. The issue is whether Talboy's use was sufficiently "open, visible, [and] notorious," *Anneberg*, 197 Ga. at 190, so as to

4

establish the existence of a prescriptive easement under OCGA § 44-5-161 (a) (3) in the first place. I agree with the majority that Talboy has failed to point to evidence creating a question of fact on this issue.